IN THE MATTER OF THE APPLICATION OF WIL-
LIAM GILBERT FOR WRIT OF CERTIORARI,
RESPONDENT, *v.* THE BOARD OF POLICE AND
FIRE COMMISSIONERS OF SALT LAKE CITY,.
APPELLANT.

1. BOARD OF POLICE AND FIRE. COMMISSIONERS.—JUDICIAL ACTS.—
REVIEW BY CERTIORARI.—The acts of the board of police and'
fire commissioners of Salt Lake City in removing employees.
from their respective departments under act approved March
8th, 1894 (Session Laws 1894, p. 33), which requires the board
to prefer charges, give accused a hearing, examine witnesses
and decide the question on evidence, are judicial in their
nature and subject to review on appeal by *certiorari*, since
there is no other plain, speedy or adequate remedy by law
provided.

2. ID.—QUASI JUDICIAL PROCEEDING.—JUDICIAL POWER.—Act ap-
proved March 8, 1894 (Session Laws 1894, p. 33), authorizing
police and fire commissioners of Salt Lake City to discharge
employees on summary proceedings, *quasi* judicial in their
nature, does not violate the provisions of the organic act, sec-
tion 9, which provides that the judicial power shall be vested
in the supreme, district and probate courts, and in justices of
the peace.

3. ID.—OFFICE OF THE STATUTORY WRIT OF REVIEW.—2 Comp.
Laws 1888, § 3719, authorizes the issuance of a writ of review
when an inferior tribunal exercising judicial functions has.
exceeded its jurisdiction, and there is no appeal, nor any plain,
speedy or adequate remedy. Id. § 3725, provides that the re-
view cannot be extended further than to inquire whether the
inferior tribunal has regularly pursued its authority. Id. §
3726, provides that the court, when a return has been made,
must hear the parties, and may either affirm, modify or annul
the proceedings below. *Held,* that the power thereby con-
ferred being merely confirmatory of the common law juris-
diction on *certiorari*, the appellate court may review the evi-
dence to find if there is any proof to legally warrant the

judgment or decision of the board, and whether it had jurisdiction and whether its proceedings were had in accordance with law. (*Golding* v. *Jennings,* 1 Utah, 135, disapproved.)

4. ID.—CONSTRUCTION OF STATUTE.—Act approved March 8, 1894, section 6 (Session Laws 1894, p. 33), authorizing the board of police and fire commissioners of Salt Lake City to adopt rules to govern the selection and appointment of persons "employed" on the police force or in the fire department, and section 9, providing that such rules shall specify the date when they shall take effect, and "thereafter" all selections shall be made according to such rules, does not authorize the board to require a person already employed to take the examination prescribed by it.

5. ID.—ID.—NECESSARY PROCEEDING TO REMOVE EMPLOYEE.—Under act approved March 8th, 1894, (Session Laws 1894, p. 33), providing that no member of the fire or police department of Salt Lake City, shall be dismissed unless charges have been previously preferred against the member and the accused given an opportunity to be heard before the board of police and fire commissioners, a removal by such board, without any evidence to sustain the charges preferred, is void, and will be annulled on *certiorari.*

(No. 562.    Decided April 27, 1895.    40 P. R. 264.)

APPEAL from the District Court of the Third Judicial District.    Hon. Samuel A. Merritt, *Judge.*

In the matter of the application of William Gilbert for a writ of *certiorari* to review the action of the board of police and fire commissioners of Salt Lake City in discharging relator from the fire department.    From the judgment of the district court for relator, the board appeals.    *Affirmed.*

*Mr. E. D. Hoge,* City Attorney, and *Mr. W. G. Van Horne,* Assistant City Attorney, for appellant.

"A copy of the judgment signed by the clerk, entered upon or attached to the writ and return, constitute the

judgment roll." Comp. Laws, 1888, vol. 2, § 3728. Consequently the petition which put the court in motion and formed the basis for the writ, while sent up in this record has no place in the same and should not be considered by this court. *Reynolds* v. *San Joaquin Co.*, 47 Cal 604; *Garretson* v. *Supervisors*, 61 Cal. 54. A writ of *certiorari* brings up for review only the question whether the inferior officer, court or tribunal has exceeded its jurisdiction and cannot be used as a mere writ of error for the correction of mistakes, either in law or fact, committed by the inferior tribunal within the limits of its jurisdiction. *C. P. R. R. Co.* v. *Board Equal.*, 46 Cal. 670. But suppose we are mistaken in all this, and the court had the right to look into the testimony, as claimed by the plaintiff or respondent, we claim that there was testimony before the board to justify the action of the board, and the court had no legal power to say the weight of the testimony was against the action taken, or that the board received other than legitimate testimony, as all the authorities hold that mistakes in law or of fact cannot be corrected by this writ. *C. P. R. R. Co.* v. *Board Equal.*, *supra.*

The act, when taken as an entirety, was intended to improve and make more efficient the police and fire departments, and increase their usefulness, which will be defeated by the construction claimed by the plaintiff in these cases, and in fact have the tendency to retain men in the departments who may be entirely unfit for the position, simply because they were on the force when the act was passed. There is a proposition of law involved in this case which we think is conclusive against the plaintiff and settles the whole matter in favor of the board. *Certiorari* is not the remedy, even when "there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law," unless the board was exercising

judicial functions, which we claim it was not. It was claimed below that in this matter, the board was acting judicially. If this be true, the act of the legislature conferring judicial functions is void, being in conflict with the provisions of section 9 of the organic act, which provides that the judicial power of said territory shall be vested in a supreme court, district courts, probate courts and in justices of the peace. On this point, we cite and call attention of the court to the case of *Ferry* v. *King*, 26 Pac. 537–8.

*Mr. O. W. Powers* and *Mr. D. N. Straup*, for respondent.

The term "judicial functions" is not always to be received in the sense usually applied to courts of justice. Judge Bronson, in *Supervisors* v. *Briggs*, 2 Denio, 26, speaks of the settlement and allowance of an account by the board, as an adjudication of the matter by a proper tribunal, and therefore conclusive. See, also, 9 Wend. 508; *Gillespie* v. *Broas*, 23 Barb. 370; *People* v. *Mayor of New York*, 5 Barb. 45; *People* v. *Supervisors, El Dorado Co.*, 8 Cal. 58; *Robinson* v. *Supervisors, Sacramento Co.*, 16 Cal. 209–213. In California, under a statute word for word like ours, it was held that the superior courts have power to review on *certiorari* the action of a board of supervisors in such a matter as granting a ferry license. *Murray* v. *Supervisors, Mariposa Co.*, 43 Cal. 495; *Waugh* v. *Chauncey*, 13 Cal. 11; *Fall* v. *Paine*, 23 Cal. 303. It was also held that the writ may be used to restrain the excessive judicial acts of municipal boards generally. *People* v. *Supervisors*, 8 Cal. 59; *S. V. W. W.* v. *Bryant*, 52 Cal. 132; *Maxwell* v. *Supervisors*, 53 Cal. 389; *Miller* v. *Supervisors*, 25 Cal. 96. Our writ of review is broader than the common-law writ of *certiorari*. *Farmington* v. *Commissioners*, 112 Mass. 206; Lidd. Practice, 397. Under it, in

determining whether the board exceeded its jurisdiction, the court may examine the evidence.    Not to determine whether the probabilities preponderate one way or the other, but simply to determine whether the evidence is such as will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the superior tribunal. *Jackson* v. *People,* 9 Mich. 111; *Ex parte Madesire, etc.,* 62 Ala. 93; *Camden* v. *Block,* 65 Ala. 236; *Ransom* v. *McIlvine,* 49 Mich. 194; *Hyde* v. *Nelson,* 11 Mich. 357; *People* v. *Police Board,* 72 N. Y. 415; *Moreland* v. *Whitford,* 54 Wis. 150; *Berry* v. *Lowe,* 10 Mich. 9.

It is now the settled law, that on *certiorari* the reviewing court is not confined to the mere question of jurisdiction of the person and the subject matter, but it will look into the proceedings and if the adjudication is unsupported by any evidence it will be reversed. *People* v. *Board of Metropolitan Police,* 39 N. Y. 506; *People ex rel Smith,* 45 N. Y. 777. Formerly it was held that the revisory court on *certiorari* could only inquire as to the jurisdiction of the inferior tribunal, but the better opinion now is, that errors of law affecting the merits of the case occurring in the course of the proceedings may be reviewed. *McAlliday* v. *Horton,* 75 Ala. 491; *Donahue* v. *Will Co.,* 100 Ill. 94; *Hyslop* v. *Finch,* 90 Ill. 171; *State* v. *Dodge Co.,* 56 Wis. 79; *People* v. *Assessor,* 39 N. Y. 81; *People* v. *Assessors,* 40 N. Y. 154; *People* v. *Allen,* N. Y. 538; *Menden* v. *Commissioners,* 5 Allen, 13; *Farmington* v. *Commissioners, supra; Teuksbury* v. *Commissioners,* 117 Mass. 717; *Milwaukee Iron Co.* v. *Schable,* 29 Wis. 447; *St. Paul* v. *Marvin,* 16 Minn. 91; *People* v. *Betts,* 55 N. Y. 600. And this is the holding of the courts with reference to the common law writ.    The statutory writ is a more flexible remedy. *Washington* v. *Parker,* 60 Ala. 447; Cooley on Taxation, 757.

It has been held that even where the inferior tribunal is given the power to finally hear and determine a cause, the superior court may revise its proceedings on *certiorari. People* v. *Turner,* 1 Cal. 152; *Rex* v. *Morley,* 2 Burr. 1040; 2 Hanks, P. C. 286.    *Certiorari* lies to review the proceedings of inferior tribunals invested with the power of hearing and deciding election cases.    *Whitney* v. *Board of Delegates,* 14 Cal. 480; *State* v. *Marlow,* 15 Ohio Stat. 114; *Com.* v. *Leech,* 44 Pa. St. 332; *Gibbons* v. *Shepherd,* 65 Pa. St. 20; *Chenowith* v. *Commissioners,* 26 W. Va. 230; *State* v. *Cockrell,* 2 Rich. (S. C.) 6; 1 Dillon Mun. Cor. (3 ed.) 232.    In determining the question of the jurisdiction and power of the court on a writ of *certiorari,* three essential features are to be considered.    *First.* Whether the board acted within its jurisdiction.    *Second.* Whether it acted according to law.    *Third.* Whether it made its determination of the facts upon any evidence which would warrant it.    *State* v. *Whitford,* 54 Wis. 150. In *People* v. *The Board of Police,* 39 N. Y. 521, the question was before the court of appeals, of New York, as to whether the police board, with powers and duties almost identical with ours was a court, and Judge Woodruff said: " Is that board a court,    *    *    *    .    Both questions must, I think, be answered in the negative." Such was also the decision in *Caldwell's Case,* 13 Abb. 405; *People* v. *Overseers,* 6 How. 25; *People* v. *Heath,* 20 How. 304.

BARTCH, J.:

The relator in this case was a member of the fire department in Salt Lake City, and his contention is that he was wrongfully removed from his position in that department by the board of police and fire commissioners on the 11th day of August, 1894.    It appears from the record that he held the position for a period exceeding three years imme-

diately prior to his removal; that the said board claimed
the right to remove him under and by virtue of chapter
37, Sess. Laws 1894, and, in case he desired to be reap-
pointed, to compel him to undergo a competitive examina-
tion, as therein provided, in the same manner as applicants
who were not members of said department at the time of the
enactment of said chapter; that the appellant acknowledged
that the relator was an efficient officer of long service;
that the charges preferred against him as grounds for
removal were that he was under the minimum height, had
defective eyesight, and was over the maximum age; that a
hearing was had on these charges after he had been sus-
pended from service, but the appellant introduced no
evidence to sustain them; that at such hearing the burden
of proof was cast upon the relator to show that there was
not sufficient ground for his removal; and that the charges
were sustained, and the relator dismissed from service.
After the relator was thus removed, he applied to the dis-
trict court for a writ of *certiorari* commanding the appel-
lant to certify and return to the clerk of said court all
the proceedings concerning his suspension, dismissal, and
discharge.   At the hearing of the petition, after the return
made in obedience to the writ, the court entered judgment
that the decision of the board suspending and dismissing
the relator from service be set aside, and declared the
same to be of no force and effect.   From this judgment
the board appealed.

   The first question to be considered on this appeal is
whether the board was acting in a judicial capacity; for
unless it was exercising judicial functions, and not simply
performing ministerial duties, its action cannot be reviewed
on *certiorari*.   Counsel for the appellant contend that it
was not in the exercise of judicial functions, and that, if
it was, then, it is insisted, the act of the legislature con-
ferring judicial power upon the board is void, as being in

conflict with the organic act of this territory, which provides, in section 9 thereof, "that the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace." The law which it is claimed is in conflict herewith if it empowers the board to exercise judicial functions is found in the legislative act approved March 8, 1894 (Sess. Laws, p. 33), and, so far as necessary to this decision, provides, in section 6, that, within a certain time after its appointment, the board "shall prepare and adopt such rules and regulations to govern the selection and appointment of persons employed on the police force or in the fire departments of said city as shall be adapted to secure the best service for the public, in each department;" and such rules may provide for competitive examination of applicants. Section 7, among other things, provides that "no officer or member of said departments shall be removed except for cause, and after public hearing before said board upon charges made in writing;" and in section 9 it is provided: "Such rules and regulations shall specify the date when they shall take effect; and thereafter all selections of persons for employment, or appointment, or promotion, either in the police or fire departments, * * * shall be made in accordance with such rules and regulations." Section 12 specifies the character of and provides how competitive examinations of applicants shall be conducted, and section 20 reads as follows: "Except in cases herein otherwise provided, no officer or member of said fire or police departments shall be dismissed except for cause, nor until after trial, and by an affirmative vote of three members of said board. The accused shall be furnished with a written copy of the charges against him at least ten days previous to the day of trial, and he shall have an opportunity to examine witnesses in his behalf, and all

witnesses shall be examined under oath, and all trials shall be public."

These are the several provisions of the law under which the board in this case proceeded to remove the relator. It is clear that the power here conferred is judicial in its nature, because, in order to effect a removal, the board is required to prefer charges, afford the accused an opportunity to be heard, examine witnesses, and decide the question upon evidence. All such proceedings are of a judicial character. The term "judicial," however, as applied to the actions of boards of this class, is not to be received in the sense ordinarily applied to courts of justice. The words "judicial power," when applied to such courts, mean the authority vested in the judges. Bouvier. In this sense these words are used in the organic act, and nowhere is there any provision in said act which prohibits the legislature from creating a ministerial board, and requiring of it the performance of judicial acts as incidental to its ministerial capacity. While such boards are essentially ministerial, and may be, to a certain extent, legislative, bodies, still they may be, and frequently are, endowed with *quasi* judicial power to proceed in a summary way, and out of the course of the common law. A city council is such a body, and so likewise is a board of county commissioners, or county court, as denominated in this territory; and yet no one has pretended to question the power of such a body in such a proceeding, as being inconsistent with the organic act. Courts of justice may authoritatively declare what the law is. Such a board or body has no such power. Its judicial authority extends no further than is necessary to an orderly and proper management of the affairs over which it has control. We think the law is well settled that the legislature may authorize boards of this character to perform judicial acts, and that such acts may

be reviewed on *certiorari* when there is no other plain, speedy, or adequate remedy provided; and it is equally well settled that, when the acts complained of are purely ministerial, *certiorari* ordinarily will not lie.    *Robinson* v. *Supervisors,* 16 Cal. 208; *State* v. *Common Council of Duluth* (Minn.), 55 N. W. 118; *State* v. *Whitford,* 54 Wis. 150, 11 N. W. 424; *People* v. *Mayor, etc., of New York,* 5 Barb. 43; *Merrick* v. *Township Board,* 41 Mich. 630, 2 N. W. 922; *Waugh* v. *Chauncey,* 13 Cal. 11; *Waterworks Co.* v. *Bryant,* 52 Cal. 132; *In re Fay,* 15 Pick. 243; *Herrick* v. *Carpenter* (Iowa), 6 N. W. 574; *Supervisors* v. *Briggs,* 2 Denio, 26. The acts of the board of police and fire commissioners complained of in this case were neither ministerial nor legislative, but judicial, in their nature, and therefore we are of the opinion, there being no other remedy for review provided by law, that *certiorari* is the proper and appropriate remedy.

The most important question raised in this record is whether, on a writ of *certiorari,* the court may extend its inquiry beyond the mere question of jurisdiction of an inferior tribunal, board, or officer, and determine whether such inferior tribunal, board or officer proceeded in accordance with law. If, in a case like the one at bar, as is contended by counsel for the appellant, the court has no power on *certiorari* to examine the evidence or proceedings for any purpose, then the court cannot inquire into the evidence to ascertain whether errors of law were committed during the progress of the trial. Nor can it consider whether the facts presented by the record warrant the judgment pronounced by the board, not even though such judgment, when tested by the law applicable to such facts, was found to be erroneous and unjust. Under this contention the sole question to be determined would be whether the judgment of the board was within its jurisdiction, and, if so, then such judgment would be

deemed conclusive.   In accordance with this view, the writ removes nothing from the inferior tribunal but the record, and, if the return contains the evidence, such evidence cannot be considered; and in such case the fact that the return contains the testimony, or other matter not properly a part of the record, does not enlarge the power of review, nor authorize the examination into anything but the question of jurisdiction, and the court cannot look into the evidence to determine any question on its merits.   Counsel is not without authority for this position when the review is sought on common-law *certiorari*.   Such has often been declared to be the limit of review under the common-law writ, which it has been held our writ, in effect, is.   *Golding* v. *Jennings*, 1 Utah, 135.

This doctrine is stated in a number of New York cases. In *Ex parte, etc., Mayor of Albany*, 23 Wend. 277, Mr. Justice Cowen, after discussing the office of the writ, and referring to numerous decisions in that state relating to the limit of review on common-law *certiorari*, says: "The amount of these is that we will not, in any case, on a common-law *certiorari*, go beyond the question of power, which is another word for jurisdiction; and in searching for power we will confine ourselves to matters properly introduced into the return."   And further on, and in the same opinion, he says: "We cannot look into testimony on the merits, even when the return comes from a tribunal bound to act upon the general law of evidence."   In *People* v. *Mayor, etc., of New York*, 2 Hill, 9, Mr. Justice Bronson, delivering the opinion of the court, said: "The writ of *certiorari*, when issued for the purpose of enabling this court to exercise its supervisory power over inferior tribunals, removes nothing but the record—or other entry in the nature of a record—of the proceedings in the court below; and, if the return contains anything more, it can-

not be regarded." There are other cases in New York and elsewhere which declare the same doctrine. Some hold that, under the provision of statute, errors may be ground for reversal on *certiorari*, though not jurisdictional; and there is still another class of cases which holds that the proceeding on *certiorari* is in the nature of a writ of error, and that, after judgment, the whole proceeding of the inferior tribunal, including the evidence, may be brought up on *certiorari*, not only for the purpose of determining jurisdictional questions, but also for the purpose of reviewing errors of law occurring in the proceeding before the inferior tribunal, which may affect the merits of the case. And this now seems to be the settled doctrine in relation to inferior tribunals, boards, and officers exercising judicial functions, when there is no plain, speedy, or adequate remedy for review provided by law.

The office of the common-law writ has been much enlarged by statute and decision in cases where there is no other proper remedy, and, in addition to determining questions of jurisdiction, errors in law affecting the substantial rights of the parties may now be corrected, and the testimony may be included in the return, and examined to determine whether there is competent evidence to warrant and justify the judgment of the inferior tribunal. Such enlargement of the writ, however, does not warrant the setting aside of a judgment when it is based on conflicting evidence, nor when there are errors in the proceedings in matters not material as affecting the substantial rights of the party, and not violating any rule of law or affecting the jurisdiction; but where there is an entire absence of proof to support the judgment or decision or order, or where the adjudication made is entirely unauthorized by the proof, it will be set aside and reversed, even though the inferior tribunal had jurisdiction of the person or subject-matter, and so

where the proceedings culminating in the judgment are manifestly erroneous, and in violation of those prescribed by law. The same rule applies to new jurisdictions created by statute, when the proceedings required are different from those of the common law. The examination of the evidence by the appellate court is not for the purpose of determining whether the preponderance thereof is on one side or the other, but to determine whether there is any testimony which will justify the judgment or finding of the inferior tribunal, as a legitimate inference, under the rules of law, from the facts proven, regardless of whether or not the appellate court would draw such inference from such facts. And this power of review on *certiorari* is recognized as the settled law in England, as well as in this country. The English courts have long exercised the power under this writ to review the record and proceedings of inferior tribunals, to determine questions of law arising therein, in cases where there was no other remedy for review.

In the time of Sir Willam Blackstone, in criminal causes, the writ was used "to certify and remove the indictment, with all the proceedings thereon, from any inferior court of criminal jurisdiction into the court of king's bench;" and the writ of *certiorari,* when issued and delivered to the inferior court for removing any record or other proceeding, as well upon indictment as otherwise, superseded the jurisdiction of such inferior courts, and made all subsequent proceedings therein entirely erroneous, unless the court of king's bench remanded the record to the court below, to be there tried and determined. 4 Bl. Comm. 320, 321; 1 Bac. Abr. (6th ed.) p. 559; 1 Tidd. Prac. (1st Am. ed.) p. 397; *King* v. *Daman,* 2 Barn. & Ald. 378; *King* v. *Glossop,* 4 Barn. & Ald. 616. The power has been maintained with much zeal, as being founded in necessity as well as justice, for it is manifest

that if a superior court were limited in its inquiry on *certiorari* to the mere question of jurisdiction, without reference to errors in law affecting the merits of the case occurring in the proceedings before the inferior tribunal such inquiry would be of little use, and grievous wrongs could be inflicted without any possible redress. Dillon, in his commentaries on the law of Municipal Corporations (volume 2, § 739), says: "It is well settled in England that courts of superior and general jurisdiction will examine on *certiorari* the proceedings of inferior or special jurisdictions or officers. * * * If the proceedings are in a common-law court of record, a writ of error is the proper remedy to correct or vacate them, if erroneous; otherwise the remedy is by *eertiorari*. So, in this country the rule has been very generally adopted by the courts, where a new jurisdiction has been created by statute and the inferior court, board, tribunal, or officer exercising it proceeds in a summary manner, or in a course different from the common law, that the circuit or district court of the state, or other tribunal exercising general original common-law jurisdiction, has, in the absence of a special remedy being given, an inherent authority to revise the proceedings of such inferior jurisdiction by *certiorari*."

In *People* v. *Board of Police & Excise*, 69 N. Y. 408, Mr. Chief Justice Church said: "The office of a common-law *certiorari* has been very much enlarged by the later decisions in this state, but there is no authority holding that questions of fact from conflicting evidence or conflicting inferences which may be drawn from facts, or matter of judgment or discretion in a case justifying their exercise, can be reviewed. Only errors in law affecting materially the rights of the parties may be corrected, and the evidence may be examined in order to determine whether there is any competent proof to justify the adjudication made." So in *People* v. *Board of Police Depart-*

*ment,* 72 N. Y. 415, the court·said: "It is now settled that the court, on a common-law *certiorari* to review the judicial action of boards, commissioners, or inferior officers, is not confined to the mere question of jurisdiction of the person and subject-matter, but will look into the proceedings, and, if the adjudication made is unsupported by any evidence, it will be reversed." In *Berry* v. *Lowe,* 10 Mich. 9, the supreme court of Michigan, on *certiorari* to a justice, the question arising from the evidence, said: "If the alleged error is a total want of evidence to prove some fact necessary to sustain the judgment, the court will look into the testimony to see whether there was such evidence or not. If there was, it will not weigh it or inquire into its sufficiency, but affirm the judgment. If the return shows no such evidence, and it appears all the testimony before the justice has been returned, the judgment will be reversed, on the ground that the justice erred in law in rendering the judgment he did without such evidence." In *Farmington River Water Power Co.* v. *County Com'rs,* 112 Mass. 206, Mr. Chief Justice Gray said: "A writ of *certiorari* (when not used as ancillary to any other process) is in the nature of a writ of error, addressed to an inferior court or tribunal whose procedure is not according to the course of the common law. After the writ has been issued, and the record certified in obedience to it, the court is bound to determine upon an inspection of the whole record, whether the proceedings are legal or erroneous."

In *State* v. *Dodge Co.* 56 Wis. 79, 13 N. W. 680, Mr. Chief Justice Cole, delivering the opinion of the court said: "On this common-law *certiorari,* which brings up for review the proceedings of an officer or board which acts in a summary manner out of the course of the common law in the exercise of *quasi* judicial powers, this court will look into the proceedings, not only for the pur-

pose of ascertaining whether such officer or board acted according to law, and within its jurisdiction, but will also correct errors and irregularities in its proceedings." In *Harris* v. *Barber,* 129 U. S. 366, 9 Sup. Ct. 314, the supreme court of the United States, speaking through Mr. Justice Gray, said: "A writ of *certiorari,* when its object is not to remove a case before trial, or to supply defects in a record, but to bring up after judgment the proceedings of an inferior court or tribunal whose procedure is not according to the course of the common law, is in the nature of a writ of error. Although the granting of a writ of *certiorari* rests in the discretion of the court, yet, after the writ has been granted, and the record certified in obedience to it, the questions arising upon the record must be determined according to fixed rules of law and their determination is reviewable on error." *People* v. *Smith,* 45 N. Y. 772; *Inhabitants of Tewksbury* v. *County Com'rs,* 117 Mass. 563; *City of St. Paul* v. *Marvin,* 16 Minn. 102 (Gil. 91); *Inhabitants of Mendon* v. *County Com'rs of Worcester,* 5 Allen, 13; *Hyslop* v. *Finch,* 99 Ill. 171; *People* v. *Board of Police,* 39 N. Y. 506; *People* v. *Board of Assessors,* Id. 81; *Jackson* v. *People,* 9 Mich. 111; *Fall* v. *Paine,* 23 Cal. 303; *Rawson* v. *McIlvaine,* 49 Mich. 194, 14 N. W. 513; *Iron Co.* v. *Schubel,* 29 Wis. 444.

From an examination of the authorities, it is quite clear that the contention of counsel that in a case like the one at bar, where there is no other remedy provided by law, the review is limited to questions of jurisdiction, and that the court cannot look into the evidence for any purpose rests on no sufficient foundation, and, if such were the law, then the board of commissioners could arbitrarily exercise the power of removal, however groundless might be the charges preferred against the officer, or erroneous the judgment. If the board had jurisdiction of the sub-

ject or of the person to be affected, wrongs committed
would be remediless, and every person subject to its au-
thority would be absolutely at its mercy.    In *People* v.
*Board of Police, supra,* Mr. Justice Woodruff, in deliver-
ing the opinion of the court, after reviewing a number of
the more prominent cases on the writ of *certiorari,* and
expressing a belief, in view of the great number of pro-
ceedings of a summary character in which powers are
exercised affecting valuable rights, both of person and
property, that this most useful writ had been confined
within too narrow limits, said: " Let it be once estab-
lished that when an officer or board of officers have juris-
diction of the subject or of the persons to be affected,.
and proceed in its exercise according to the prescribed
forms or mode, their determination is final, and beyond
the reach of any review, whatever errors in law they may
commit, and however clear it may be upon undis-
puted facts that their judgment, decision, or order is not
warranted, and there is danger that much of injustice and
wrong may happen without possibility of redress."

Nor are the views herein expressed regarding the office
of a common-law *certiorari,* and the power of the court
on such a writ, in contravention of the statute of this
territory in relation to this subject.    Section 3718, Comp.
Laws Utah 1888, reads as follows: " The writ of *certiorari*
may be denominated the writ of review."    It is apparent
that the writ here designated is the common-law *certiorari,*
and hence the power of the court under it is the same as
at common law, except as narrowed or enlarged by statute.
Section 3719, Id., reads:    " A writ of review may be
granted by any court, except a probate or justice's court,
when an inferior tribunal, board or officer exercising
judicial functions, has exceeded the jurisdiction of such
tribunal, board or officer, and there is no appeal, nor in
the judgment of the court, any plain, speedy, and adequate

remedy." This section designates under what conditions and from what court the writ may issue. It may issue when there is no appeal or other plain, speedy, and adequate remedy. In the case at bar there is no pretense that the relator has any other remedy. Section 3722, Id., reads: "The writ of review must command the party to whom it is directed to certify fully to the court issuing the writ, at a specified time and place, a transcript of the record and proceedings, (describing or referring to them with convenient certainty), that the same may be reviewed by the court, and requiring the party in the meantime to desist from further proceedings in the matter to be reviewed." This section is simply declaratory of the common law, for, as has been seen, at common law the record as well as the proceedings of the inferior tribunal are brought up in the return to the writ, and the inferior court is prohibited from proceeding further in the meantime. Such is the law declared in this statute. Section 3725, Id., reads: "The review upon this writ can not be extended, further than to determine whether the inferior tribunal, board or officer, has regularly pursued the authority of such tribunal, board or officer." It would indeed be a very narrow interpretation which would limit the review of courts under this section to the mere question whether the inferior tribunal, board, or officer had jurisdiction of the party or subject-matter, especially when considered in connection with the next section (3726, Id.), the only remaining one material here, and the language of which is: "If the return to the writ be defective, the court may order a further return to be made. When a full return has been made, the court must hear the parties, or such of them as may attend for that purpose, and may thereupon give judgment, either affirming, or annulling or modifying the proceedings below."

Construing these two sections together, it is evident

that in any case where the inferior tribunal, board, or officer has not regularly pursued its authority in the course of its proceedings, or has rendered judgment, or made an order in contravention of law when applied to the facts, the court may, after hearing the parties, render judgment as provided in the last section quoted. For this purpose the court may of necessity, and as a salutary restraint upon such inferior tribunal, board, or officer, require that the entire proceedings, including the evidence, be brought up in the return, and look into the testimony to determine whether there is any evidence which will warrant, as a matter of law, the judgment, decision, or order which is the subject of complaint. The power here conferred upon the court does not essentially differ from that exercised by the courts on common-law *certiorari*. It is simply affirmatory of the settled rule of law. Nor are the views expressed herein on this question of the power of a *certiorari* in conflict with the decision of this court in *Saunders* v. *Sioux City Nursery*, 6 Utah, 431, 24 Pac. 532. In *Golding* v. *Jennings*, 1 Utah, 135, we think the court confined the office of the writ within too narrow limits, and, so far as that case is in conflict with the rule herein declared, it is disapproved. We conclude, therefore, that in the case at bar the board, in its return to the writ, properly certified the whole proceeding had before it, including the evidence, and that the district court had power, and on appeal this court has power, to examine the whole evidence, to determine whether, as a matter of law, there was any proof before the board which could sustain its judgment discharging and dismissing the relator from service, as well as to determine whether it had jurisdiction of the party, and whether its proceedings were had in accordance with law.

Having thus determined that the record and proceedings of the board are properly before this court on appeal, the

further question is made whether the appellant had authority to compel the relator to undergo a competitive examination as a condition to his continuing in the employ of the department. To determine this question, reference to the act approved March 8, 1894, again becomes necessary. Counsel for appellant insist that the word "employed," as used in section 6 of the act, in the sentence, "Said boards in the cities mentioned in this act, shall prepare and adopt such rules and regulations to govern the selection and appointment of persons employed on the police force, or in the fire department," etc., applied to all persons in the employ of either department mentioned in the act at the time of its passage, as well as to applicants for positions thereafter. Such a construction would compel all such employés, at the mere pleasure of the board, to submit either to a removal from service or to undergo the competitive examination provided for in the act for applicants who may be seeking employment; and it appears in this case that the board acted on such construction, for it demanded of the relator that he undergo such an examination as a condition precedent to his continuing in its employ. An examination of the entire act reveals no such legislative intent, and, if there is any doubt as to the meaning of the word "employed" in section 6, such doubt is removed by section 9, for in that section the legislature expressly provided that: "Such rules and regulations shall specify the date when they shall take effect; and thereafter all selections of persons for employment, or appointment, or promotion," etc., shall be made according to such rules and regulations. The provision is for selections to be made thereafter; that is, after the rules and regulations have been adopted. There was manifestly no intention to include among applicants for employment those who were already in the service. Nor was it necessary to so include employés to secure efficiency in either department, because

there is ample provision in the act to secure the removal
and dismissal of all those who may be unfaithful or in-
competent.    To compel persons who were in the employ
of either department at the time of the passage of the act,
and who continued therein, to submit to an examination,
or, failing to do so, to suspend or remove them from
service for such failure, is unwarranted under the law.

The remaining question is whether the appellant regu-
larly pursued its authority in the proceedings had to
remove the relator.    The statute law applicable to this
branch of the case is found in sections 7 and 20, herein-
before referred to and quoted.    These sections provide that
no officer or member, either of the fire or police depart-
ment, shall be dismissed or removed, except for cause, nor
unless charges have been previously preferred against such
officer or member in writing, and the accused given an
opportunity to be heard.    This is a salutary law founded in
justice, is mandatory, and must have been strictly pursued
or else the judgment of the board is nugatory.    A similar
provision of a statute was construed by this court in the
case of *People* v. *McAllister*, 10 Utah, 357, to which we
refer, on this question of the removal of officers for cause,
for our views on the question in this case.    An examina-
tion of the record before this court on appeal shows that
the relator, while in actual service in the fire department,
was suspended; that submission to examination was made
a condition precedent to reinstatement; that thereafter
charges were preferred against him, as hereinbefore stated,
but at the hearing the board introduced no evidence to
sustain the charges; and the record shows that, according
to the evidence of the relator, he was in every way an
efficient officer, and that the *onus probandi* was cast upon
him to show that there was not sufficient grounds for his
removal.    An examination of the evidence in detail is un-
necessary.    Nor is further reference to the record neces-

sary. It discloses a state of facts and a course of pro-
ceeding from which it is manifest that the board did not
regularly pursue its authority, and there is no evidence in
the record to sustain its decision and order suspending and
discharging the relator from service. Such decision and
order are therefore void as being in excess of jurisdiction
and the judgment of the district court must be affirmed.
The judgment is affirmed.

SMITH and KING, JJ., concur.