[Civil No. 4296. Filed April 28, 1941.]

[112 Pac. (2d) 870.]

HOWARD BATTY, Appellant, v. THE ARIZONA STATE DENTAL BOARD and P. H. BENNETT, R. A. McCALL, F. W. BOVILLE, B. A. GLENNIE and J. L. BORAH, as Members of the Arizona Dental Board, Appellees.

Mr. R. C. Stanford, Mr. R. C. Stanford, Jr., Mr. Harlow H. Akers and Mr. John W. Murphy, for Appellant.

Mr. Henderson Stockton, Mr. S. N. Karam, Mr. Eli Gorodezky and Mr. J. W. Cherry, Jr., for Appellees.

LOCKWOOD, C. J.—This is an appeal by Howard Batty, plaintiff, from a judgment of the superior court of Maricopa county, upon a writ of *certiorari* brought by plaintiff against the Arizona State Dental Board, hereinafter called the board, and the individual members thereof, revoking the license of plaintiff to practice dentistry within the state of Arizona. The factual situation may be stated as follows.

Plaintiff was admitted to the practice of dentistry in Arizona in 1929, and practiced his profession more or less continuously thereafter up to February 14, 1938. On that date he received a written order citing him to appear before the board and show cause why his license should not be revoked. The charges against him were stated as follows:

"I. That Dr. Howard Batty, D.D.S., is physically incompetent to practice dentistry in that he is now suffering from pulmonary tuberculosis.

"II. That Dr. Howard Batty, D.D.S., has been guilty of misrepresentation in securing dental licenses in the state of Arizona in that he represented himself at the time of procuring dental licenses to be free from any malignant, infectious or contagious diseases, whereas in truth and in fact, said Dr. Howard Batty, D.D.S., was at the time of procuring a dental license under the Dental Act of 1935, and when he first procured a dental license in 1929, suffering from pulmonary tuberculosis.

"III. That Dr. Howard Batty, D.D.S., has been and is guilty of fraud in his practice of dentistry in that he practices dentistry under names not included in his license and he permits his office and facilities to be used in the practice of dentistry by persons not licensed to engage in the practice of dentistry; and in that he sends certain of his patients to a dental laboratory wherein dentistry is practiced by persons without a dental license, to have dental work performed upon his patients in such dental laboratory; and in that he authorizes and permits those not licensed as dentists, working in such dental laboratory, to charge patients for the services performed by himself as a dentist, and by unlicensed dentists working in such dental laboratory, and to collect therefor; and in that he employs unlicensed persons to perform work which can be done legally only by licensed persons."

A hearing was had on these charges before the board and five witnesses testified. The board, after such hearing, adopted the following resolution:

"Resolved, That after hearing of the accusations against Dr. Howard Batty, D.D.S., it appears to the satisfaction of the board that the charges have been sustained; and

"Resolved, That the license of the accused shall be revoked unless the licensee, within thirty days from and after the date hereof and the service of a copy of this resolution upon the accused, Dr. Howard Batty, D.D.S., or his attorneys, John W. Murphy and Harlow H. Akers, shall sue out a Writ of Certiorari in the Superior Court of Maricopa County, Arizona, the county wherein the accused licensee, Dr. Howard Batty, D.D.S., maintains his office and practice of dentistry.''

Thereafter plaintiff sued out a writ of *certiorari* in the superior court, which court considered the matter on the record and entered the following judgment:

"IT IS ORDERED, ADJUDGED AND DECREED that petitioner, Howard Batty, take nothing by his petition and that the proceedings, finding and judgment of the Arizona State Dental Board be affirmed and that respondent, Arizona State Dental Board, do have and recover of and from petitioner, Howard Batty, its costs, taxed herein in the sum of $——.

"The above and foregoing form of judgment is hereby settled and approved this the 8 day of April, 1940.

"J. C. NILES
"Judge of the Superior Court of Maricopa County, Arizona.''

The appeal is from this judgment.

The first question for us is whether the superior court of Maricopa county had jurisdiction to review the actions of the board by a writ of *certiorari*. This question is determined by the construction of chapter 24, Laws 1935, as it may be affected by sections 1 and 6 of article 6 of the Constitution of Arizona, which sections read, so far as material to this case, as follows:

"§ 1. The judicial power of the state shall be vested in a Supreme Court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law."

"§ 6. . . .

"Superior courts and their judges shall have the power to issue writs of *mandamus, quo warranto,* review, *certiorari,* prohibition, and writs of *habeas corpus* on petition by, or on behalf of, any person in actual custody in their respective counties. Injunctions, attachments, and writs of prohibition and of *habeas corpus* may be issued and served on legal holidays and non-judicial days. Grand juries shall be drawn and summoned only by order of the superior court."

It is contended by the board that superior courts have no right to review by writ of *certiorari* the decisions of the state dental board or, indeed, of any similar state board. Its argument is based primarily upon a recent decision of the Supreme Court of California, whose Constitution, so far as the sections of ours just quoted are concerned, is similar in substance, though not identical in language. In the comparatively recent case of *Standard Oil Co. of California* v. *State Board of Equalization,* 6 Cal. (2d) 557, 59 Pac. (2d) 119, the Supreme Court of that state held as follows:.

"Concisely stated, our conclusion that we are without authority or jurisdiction to entertain this proceeding or to issue the writ here sought is based upon the established premises that a writ of *certiorari,* commonly referred to as a writ of review, will lie only to review the exercise of judicial functions (section 1068, Code Civ. Proc., as amended by St. 1935, p. 386) and that the Legislature is without power, in the absence of constitutional provision authorizing the same, to confer judicial functions upon a statewide administrative agency of the character of the respondent.

"To hold that judicial power has been conferred upon the respondent board would be tantamount to

holding such attempted grant unconstitutional to that extent. We think it was not intended by the Legislature to confer any judicial power on the respondent board and it necessarily follows that this proceeding for a writ of review lacks one of the elements essential to its proper determination.''

The rationale of the decision may be stated syllogistically as follows: (a) The legislature may not confer ''judicial'' powers upon any body created by law except the courts permitted by the Constitution; (b) a writ of *certiorari* may only be used to review the exercise of ''judicial'' powers; (c) therefore, it may not be used to review the action of any administrative body, since such body is not a court. With all due respect to the opinion of that court, we think it committed what is known as the fallacy of the undistributed middle in that the ''judicial'' power in the major premise is not co-extensive with the ''judicial'' power in the minor.

As was said in *State ex rel. Attorney General* v. *Hawkins,* 44 Ohio St. 98, 5 N. E. 228, and quoted by us approvingly in *Alabam's Freight Co.* v. *Hunt,* 29 Ariz. 419, 242 Pac. 658, 660:

'' 'What is judicial power cannot be brought within ring fence of a definition. It is, undoubtedly, power to hear and determine; but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power.' ''

Courts frequently use the phrases ''judicial'' power and *''quasi*-judicial'' power indiscriminately and inaccurately. We think that the vital difference between the two is that ''judicial'' power, strictly speaking, is vested only in a court. *Edwards* v. *Dykeman*, 95 Ind. 509; *Wilson* v. *Price-Raid Auditing Comm.,* 31 Kan. 257, 1 Pac. 587; *Gilbert* v. *Board of Police & Fire Com'rs,* 11 Utah 378, 40 Pac. 264; *Bel-*

*lingham Co.* v. *City of New Whatcom,* 20 Wash. 53, 54
Pac. 774; *Callanan* v. *Judd,* 23 Wis. 343; *State ex rel.
School Dist. No. 1* v. *Andrae,* 216 Mo. 617, 116 S. W.
561; *Missouri, K. & T. R. Co.* v. *Shannon,* 100 Tex. 379,
100 S. W. 138, 10 L. R. A. (N. S.) 681. When, how-
ever, the power to hear and determine whether a cer-
tain state of facts which requires the application of a
law exists is committed to an administrative or execu-
tive officer, although the particular power may be iden-
tical with one which is also exercised by a court, it is,
strictly speaking, not ''judicial'' but *''quasi-*judicial''
power. *Hoyt* v. *Hughes County,* 32 S. D. 117, 142
N. W. 471; *State* v. *Whitford,* 54 Wis. 150, 11 N. W.
424; *Conover* v. *Gatton,* 251 Ill. 587, 96 N. E. 522;
*Charge to Grand Jury, Fug. Slave Law,* 30 Fed. Cas.
1007, No. 18,261; *State ex rel. Milwaukee Med. College*
v. *Chittenden,* 127 Wis. 468, 107 N. W. 500; *Mitchell* v.
*Clay County,* 69 Neb. 779, 96 N. W. 673, 98 N. W. 662;
*West Flagler Amusement Co.* v. *State Racing Comm.,*
122 Fla. 222, 165 So. 64.

█ We think the term ''judicial'' powers as used
in constitutional provisions like sec. 1, art. 6 of our
Constitution, on both reason and authority, includes
only those powers which as a matter of law can be
conferred only upon courts as such, and does not in-
clude the power to hear and determine facts and apply
the law thereto which has been conferred on adminis-
trative or executive officers acting in the proper exer-
cise of the duties imposed upon them by law. The
construction of a constitutional provision like that in
question, given by the California court, is not upheld
by the weight of authorities and would, if carried to
its logical conclusion, emasculate, if not destroy, the
powers of practically every administrative board or
tribunal in each state with a similar Constitution. A
large proportion of the government of all the states is
now carried on through various administrative boards

or tribunals which are not courts in the strict sense of the word, and yet which continuously and necessarily exercise powers which are essentially *quasi*-judicial in their nature. A question almost identical with the one involved in the present case arose in the state of Utah, in the case of *Citizens' Club* v. *Welling,* 83 Utah 81, 27 Pac. (2d) 23, 24. There, also, it was urged that *certiorari* only reviewed the exercise of judicial power, and that section 1 of article 8 of the Constitution of Utah limited judicial power to courts. The Supreme Court said:

"Both parties agree that the term 'judicial power' as employed in the Constitution is not capable of precise definition, and what is judicial, and what not, is largely to be determined by the nature or character of the function or power conferred and exercised or to be exercised. From the cited cases by the appellant we may deduce these principles: That while the term 'judicial power' embraces all suits and actions whether public or private, it does not necessarily include the power to hear and determine matters not necessarily in the nature of a suit or action between parties; that the term does not apply to those cases where the judgment is exercised or is to be exercised as a mere incident to the execution of a ministerial power or duty; that power to hear and determine matters more or less affecting public and private rights may be conferred upon and exercised by administrative and executive officers without offending constitutional provisions relating to the judicial power vested in the courts; that in such particular, there are various boards and commissions which under legislative acts function as a part of the executive or administrative branch of the government, and in doing so such officers frequently are required to construe the law, ascertain facts, and make decisions which more or less call for the exercise of a judicial or *quasi*-judicial function or power, but which do not infringe constitutional provisions such as here drawn in question. . . .

"Let it be conceded that the adjudicated cases are not in complete harmony as to whether a particular

authority or power conferred upon and executed by executive or administrative officers is merely the exercise of a power incidental to the discharge of a ministerial or administrative duty, or whether it constituted the exercise of a judicial power in violation of constitutional provisions. We, however, are of the opinion that the views expressed in the cases cited by the appellant are sustained by the weight of judicial authority. The term 'judicial power of courts' is generally understood to be the power to hear and determine controversies between adverse parties and questions in litigation. Merely to say that judicial power is 'a power to hear and determine' is not decisive of the question. It is all that. Still administrative and executive officers often are required to hear and determine many facts upon which their action is based but which is not judicial in the sense that it belongs exclusively to the courts. . . .

"To hold that the act here in question is invalid because conferring judicial power upon the secretary of state in violation of the constitutional provisions, requires a holding that the acts of the Legislature conferring power and discretion upon the various boards and commissions referred to, likewise are invalid because conferring judicial power upon them in violation of the Constitution. The contrary has been held by this court and so are the authorities generally.''

The Constitution of Wisconsin, article 7, section 2, is similar in substance to those of California and Arizona in regard to judicial power being vested in the courts, yet that court in the case of *Borgnis* v. *Falk Co.*, 147 Wis. 327, 133 N. W. 209, 219, 37 L. R. A. (N. S.) 489, has held, referring to various administrative bodies of the nature of the one involved herein:

"There are many such administrative bodies or commissions, and with the increasing complexity of modern government they seem likely to increase rather than diminish. Examples may be easily thought of. Town boards, boards of health, boards of review, board of equalization, railroad rate commissions, and public utility commissions all come within this class. They perform very important duties in our scheme of gov-

ernment, but they are not Legislatures or courts. The legislative branch of the government by statute determines the rights, duties, and liabilities of persons and corporations under certain conditions of fact and varying as the facts and conditions change. Manifestly the Legislature cannot remain in session and pass a new act upon every change of conditions; but it may and does commit to an administrative board the duty of ascertaining when the facts exist which call into activity certain provisions of the law, and when conditions have changed so as to call into activity other provisions. The law is made by the Legislature; the facts upon which its operation is dependent are ascertained by the administrative board. While acting within the scope of its duty, or its jurisdiction, as it is sometimes called, such a board may lawfully be endowed with very broad powers, and its conclusions may be given great dignity and force, so that courts may not reverse them unless the proof be clear and satisfactory that they are wrong. [Citing cases.] Not only this, but many such boards are created whose decisions of fact honestly made within their jurisdiction are not subject to review in any proceeding. [Citing cases.] It is important to notice the limitation contained in the last sentence. The decision of such a board may be made conclusive when the board is acting within its jurisdiction, not otherwise. *Hence the question of its jurisdiction is one always open to the courts for review. It cannot itself conclusively settle that question, and thus endow itself with power. If no appeal from its conclusions be provided, the question whether it has acted within or exceeded its jurisdiction is always open to the examination and decision of the proper court by writ of certiorari.* The instances where the question of jurisdiction of such bodies has been examined and decided in *certiorari* actions are so numerous that it seems unnecessary to cite them. In such cases it is considered that clear violations of law in reaching the result reached by the board, such as acting without evidence when evidence is required, or making a decision contrary to all the evidence, constitute jurisdictional error, and will justify reversal of the board's action, as well as the failure to take the

proper steps to acquire jurisdiction at the beginning of the proceeding. [Citing cases.]

"Thus, in the case before us, the jurisdiction of the Industrial Commission to entertain any claim for compensation under the act rests upon two facts which must exist, viz.: (1) That both employer and employé have elected to come under the act; and (2) that the injury was received in service growing out of or incidental to the employment as the result of accident, and not of willful misconduct.

"The Industrial Commission must, of course, decide these questions in any case where they are raised; but it cannot decide them conclusively, for they are jurisdictional questions on which its right to act at all depends. They must be open to review in some court of competent jurisdiction; otherwise, the parties would be denied due process of law. . . . (Italics ours.)

This case has been cited and followed innumerable times in other jurisdictions.

 We think the logic of the two cases last cited is unanswerable, and we hold that the conferring upon an administrative body of *quasi*-judicial powers, such as have been given the board of dental examiners, is not a violation of article 6, section 1 of the Constitution, *supra*.

 The question, though, next arises as to whether the writ of *certiorari* may be used to review the exercise of the *"quasi*-judicial" powers which are conferred upon such a board. The right to issue the writ of *certiorari* conferred upon superior courts by section 6, article 6 of our Constitution is obviously the common-law right, and the legislature, therefore, may not limit or circumscribe such power by any statute. This power, under the common law, is usually held to apply to all proceedings of bodies which are acting in either a judicial or *quasi*-judicial character. *Angelus* v. *Sullivan*, 2 Cir., 246 Fed. 54; *Morley* v. *Wilson*, 261 Mass. 269, 159 N. E. 41; *State* v. *Board of Com'rs Quay County*, 27 N. M. 228, 199 Pac. 359;

*Board of Equalization* v. *State Tax Comm.,* 88 Utah 219, 50 Pac. (2d) 418; *State* v. *Wisconsin Highway Comm.,* 183 Wis. 614, 198 N. W. 753; *State ex rel. Board Com'rs State Bar* v. *Kiker,* 33 N. M. 6, 261 Pac. 816; *Clinton Tp.* v. *Teachout,* 150 Mich. 124, 111 N. W. 1052; *Riggs* v. *Board Supervisors,* 181 Iowa 178, 164 N. W. 359; *State* v. *Grootemaat,* 202 Wis. 155, 231 N. W. 628; *Board of Supervisors* v. *Melton,* 123 Miss. 615, 86 So. 369; *State* v. *Simmons,* 104 Fla. 487, 140 So. 187; *State* v. *Hall,* 282 Mo. 425, 221 S. W. 708. The citations might be extended almost indefinitely. So far as we are able to ascertain the state of California is practically alone in holding that if a board is given *quasi*-judicial powers the question of whether it has exceeded its jurisdiction in applying them may not be reviewed by *certiorari.*

 We hold, therefore, that the legislature had the right to confer upon the board of dental examiners the power to hear and determine whether the facts which the legislature said would justify a revocation of license existed, and that the superior court of Maricopa county had the right to issue a writ of *certiorari* to determine whether there was sufficient evidence that the board acted within its jurisdiction. Chapter 24, *supra,* provides that the board has jurisdiction to revoke a license for, among other things, (a) physical or mental incompetence to practice, (b) fraud or misrepresentation in securing a license, (c) fraud or misrepresentation in the practice of the profession, and (d) employing unlicensed persons to perform work which can be done legally only by licensed persons. Plaintiff was charged with all of these things and proof of one charge at least was necessary to give the board jurisdiction to revoke his license.

 So far as the first is concerned, it involves the question of whether at the time the charge was made he was afflicted with pulmonary tuberculosis. We

think there can be no question that one who has an active case of pulmonary tuberculosis is not physically qualified to practice dentistry, on account of the grave danger of infection to his patients. There is no evidence, however, in the record that at the time plaintiff was so afflicted. On the contrary, the only testimony on that point is that at one time he had drawn compensation for tuberculosis, but that the case had become arrested. One who has had tuberculosis in the past but whose case has become arrested, so long as that condition continues, is of no more danger to a patient, so far as infection is concerned, than one who has never had the disease. Charge (a) was not sustained by the evidence.

The next question is of fraud or misrepresentation in securing his license to practice. This is based on the alleged fact that at the time he secured his license he was afflicted with active tuberculosis. The only evidence on this point is that he was examined by two reputable physicians just before securing his license, and certified as free from active tuberculosis. We think that charge is not sustained by the evidence.

The next charge is fraud and misrepresentation in the practice of his profession. One of the misrepresentations alleged is that he gave his name to the examiners, when he was admitted to practice, as Batty, while his sign carried the name Battie. The names were *idem sonans,* and the evidence shows affirmatively that plaintiff had used both spellings at various times in his life, without any intent to practice a fraud upon anyone. We think the mere use of the two names is not evidence of fraud in his practice.

The remaining charges of fraud and employing unlicensed persons were based on the following testimony: One N testified that about the first of May he desired to have a dental plate made and four teeth ex-

tracted, and went to the office of plaintiff in company with one S, there being present in the office plaintiff, N, S, and one V who was a partner with one P in an independent dental laboratory. A discussion was held among them as to whether the teeth should be extracted first and the impression made, or the impression made first and the teeth extracted later, and it was decided to make the impression first. The testimony is not clear as to whether plaintiff or V directed N as to what he should do, but both were present when he was told by one of them to go to the dental laboratory and have the impression made, and nothing was said by either about the fact that V and P were not licensed dentists, a fact which was known to plaintiff. This N did some four days later and the impression was made by P, plaintiff not being present. The statute expressly prohibits such persons as P and V from making casts or impressions, unless the work is directly supervised by a licensed dentist. Three days later N returned to plaintiff's office and the latter extracted four teeth. N then went to the laboratory to have the plate put in, and while he was there plaintiff came in to collect the fee for the extractions. V made out a statement to N, showing the preparation of the plate and the extractions in separate items, whereupon N paid V and the latter gave plaintiff the $4 which he demanded for the extractions. Later it was necessary to make some adjustment on the plate and V took N to plaintiff's office, to which he had a key, and cut it down. Plaintiff, however, was not present at the time, and there is no direct evidence that he knew V was doing this work. Does this testimony, if believed by the board, justify a conclusion that plaintiff had committed fraud in his practice? This depends upon the duty of plaintiff under the circumstances.

 Dentists are included in the meaning of the term "physician and surgeon" as such term is used in defining the duties of a physician or surgeon to his patients. *In re Hunter,* 60 N. C. 372. When the relationship of physician and patient exists, it is one of trust and confidence, and the former must, therefore, in all dealings with his patient use the utmost good faith, or he is guilty of fraud. Does the conduct of plaintiff, as testified to by N, constitute fraud or misrepresentation? It appears therefrom that the relationship of physician and patient did exist between N and plaintiff. It further appears that plaintiff either advised N or heard the advice given N in his presence, without his making any comment thereon, that he should have dental services performed by P, when he knew that P was prohibited by law from performing this particular class of service, and that P did thereafter, to the knowledge of plaintiff, perform such dental services for N. Was it the duty of plaintiff to advise his patient that P was prohibited by law from doing the work which the patient desired to have done?

 The purpose and the only justification of the various statutes regulating the practice of medicine in its different branches is to protect the public against those who are not properly qualified to engage in the healing art, and one who is not licensed under such statutes is conclusively presumed to be unqualified. When a patient employs a physician he has the right to assume the latter will advise him properly in all matters pertaining to his ailments, and this certainly includes advice as to who are properly qualified to assist in his treatment. Fraud may be committed by a failure to speak, when the duty of speaking is imposed, as much as by speaking falsely. *Cartwright* v. *United States Bank & Trust Co.,* 23 N. M. 82, 167 Pac. 436; *Bussian* v. *Milwaukee, etc., R. Co.,* 56 Wis.

325, 14 N. W. 452; *Dent* v. *Bennett,* 41 Eng. Reprint, 105.

 We think a physician who knows that a patient of his is about to have surgical or medical work done by one who has no legal right to do it fails in his duty if he does not advise the patient of the situation. It has been held that when a physician takes a non-professional man with him to aid in a confinement case, where there is no emergency, both are liable in damages to the plaintiff for the failure to disclose such non-professional character. *DeMay* v. *Roberts,* 46 Mich. 160, 9 N. W. 146, 41 Am. Rep. 154.

 In an action for *certiorari* the court is not permitted to weigh the evidence, but may only consider whether there is any evidence showing that the inferior tribunal acted within its jurisdiction. The penalty under the facts is very severe, but the statute does not seem to provide any other one.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.