458 P.2d 120

Roger C. JONES and Agnes Jones, husband and wife, Appellants,

v.

Jose G. LOPEZ PLASCENCIA, Chairman, Elizabeth Brook, William N. Henry, Glenn A. Jones and James J. Coughlin, Members, Arizona State Department of Public Welfare, and John O. Graham, Commissioner, Arizona State Department of Public Welfare, Appellees.

No. 2 CA–CIV 675.

Court of Appeals of Arizona.

Aug. 18, 1969.

Rehearing Denied Oct. 6, 1969.
Review Denied Nov. 18, 1969.

Anthony B. Ching, Chief Trial Counsel, Legal Aid Society of the Pima County Bar Association, Tucson, for appellants.

Gary K. Nelson, Atty. Gen., by Peter Sownie, and Michael S. Flam, Asst. Attys. Gen., for appellees.

MOLLOY, Chief Judge.

Appellants, Roger and Agnes Jones, husband and wife, commenced this certiorari proceeding in the superior court, seeking a determination that the appellee, State Department of Public Welfare (and its constituent members and commissioner), acted without jurisdiction or abused its discretion in ruling that monthly benefits payable to the Joneses under the federally assisted "Aid to the permanently and totally disabled" (APTD) welfare program were to be reduced by an amount equal to the monthly net earnings of their 19-year-old son, less only a fixed $40 per month allowance for his expenses of employment. The reviewability and propriety of the Department's ruling are the issues before us in this appeal from the judgment of the lower court denying relief.

The following facts appear from the record developed at a departmental hearing requested by appellants. Both Mr. and Mrs. Jones are permanently and totally disabled within the meaning of those terms as they are used in A.R.S. § 46–232 which establishes for this state an APTD program, designed by the terms of the cited statute and A.R.S. § 46–311 to be in conformity with the authorizing federal legislation, which is subchapter XIV of the Social Security Act, 42 U.S.C.A. §§ 1351–1355.

Prior to April, 1968, the Joneses were each receiving $80 per month in APTD benefits, the maximum then payable to one person under the Arizona program. *See* A.R.S. § 46–232, subsec. B, as amended in 1962, and note 2, *infra*. At the time of the hearing, an affidavit executed by the Joneses' son Eugene, who is 19 years of age and resides with the Joneses, was received into the record. The affidavit reads in part as follows:

"That he [affiant] is employed at Tucson Medical Center as a laboratory attendant, and his present net earnings are * * * ($195.00) * * * per month.

" * * * that it was necessary for him to obtain an automobile to travel to his place of employment.

"That he purchased a 1966 Ford Mustang * * *.

\* \* \* \* \* \*

"That the total monthly payment paid on the car, exclusive of gasoline, oil, maintenance, license fees, wear and tear and replacement parts is * * * ($123.-30) * * *.

\* \* \* \* \* \*

"That [after certain life insurance and accident insurance premiums totaling $14.05 per month] this leaves a remaining balance of * * * ($57.65) * * * with which he meets all other necessary expenses, including gas, oil and other costs of transportation, food, clothing, laundry, recreation and any assistance

that he may be able to provide to his parents.

\* \* \* \* \* \*

"That due to circumstances beyond his control *he has not been able to contribute any amount of money to assist his parents since he obtained employment* * * *.*" (Emphasis added)

After the hearing, the examiner made findings and recommendations in which he determined that the maximum " * * * need of the assistance household * * *," composed of appellants and Eugene, which the department would consider was $202. The examiner then concluded, on the basis of departmental regulations or policy directives hereinafter set forth, that Eugene's $195 monthly net salary, diminished by a $40 cost-of-employment allowance, should be applied against the total monthly need of $202, leaving a balance or " * * * unmet need * * *" of $47 in monthly APTD benefits to be paid to appellants. The appellee department decided the matter in accordance with the examiner's conclusions and so advised appellants.

The regulations relied upon by the examiner were taken from the department's "Arizona Family Services Manual," and are set forth in the record as follows.

Section 3–1120.1:

" *'Assistance Household'* is considered to be synonymous with 'Family Unit' when it is comprised of a group of persons residing together and interdependent upon each other. The income and resources of such a group are applied for the benefit of the entire group, and the needs of the entire group are indicated in the budget."

Section 3–404.3:

"*Earned Income of Unemancipated ADA Minors*: All income and resources of members of an assistance household must be taken into consideration. As a general rule, all children under age 21 who are residing in the home of their parents or other adult relatives are considered *unemancipated* and the parent or relative has a right to the earnings and

services of said children. 'Emancipation' means the freeing of the child from the custody of the parent and from obligation to render services to him. A child becomes emancipated by attainment of majority (age 21) or by a valid marriage. Emancipation may also occur by the parent renouncing all legal duties and surrendering legal rights as a parent or by deserting or abandoning the child.

"A. *If not emancipated,* the net earned income of a child is determined by first deducting $40 as a standard cost of employment from gross earnings (salary before deductions for Social Security, Income Tax, etc.).

"(The cost of employment is a standard amount allowed for any such minor and includes $10 for miscellaneous costs such as union dues, contributions, Social Security coverage, etc., $7.50 for additional personal care items, $7.50 for extra food away from home, $7 for extra clothing upkeep and $8 for transportation.)" (Emphasis in original)

Appellants advanced essentially two contentions in the trial court: (1) that the regulations relied upon by the hearing examiner and the department are inapplicable to APTD welfare recipients, as opposed to "ADC" or "AFDC"[1] recipients; and (2) that, even if the regulations were applicable to appellants, the fixed $40 cost-of-employment factor is arbitrary, unreasonable, and repugnant to the controlling federal law.

The trial court, while indicating an inclination to agree with the merits of appellants' position, considered that it was precluded by legislative enactment from reviewing what it regarded as the policy decisions and discretionary acts of the welfare department, since in its view the de-

cision sought to be reviewed was within the broad scope of its jurisdiction and rendered in pursuance of its regular authority. The trial judge particularly relied upon A.R.S. § 46–205, subsec. C, which provides that "All decisions of the state [welfare] department shall be final, and shall be binding upon the county department." The trial judge also noted the provisions of A.R.S. § 12–902, subsec. A, a part of the Administrative Review Act, which expressly excepts from its scope of application decisions of the welfare department.

We are thus faced, at the outset, with the question of the propriety of review by writ of certiorari. In Allen v. Graham, 8 Ariz. App. 336, 446 P.2d 240 (1968), we held, giving effect to § 12–902, subsec. A, supra, that a welfare seeker did not have a statutory right to judicial review of a departmental decision denying benefits. The plaintiff there, however, had commenced an ordinary civil action seeking "review" of the departmental decision and a declaratory judgment. 8 Ariz.App. 337, 446 P.2d 241. We noted, but did not decide, the question of whether extraordinary writs such as a writ of certiorari could be available to a thwarted applicant. 8 Ariz.App. 338, 446 P.2d 242. We think the question, now before us, must *in this particular* case be answered in the affirmative.

We do not glean from the terms of § 46–205, subsec. C the same broad meaning as ascribed to them by the trial judge. Rather, we think that § 46–205, subsec. C expresses the legislature's clear intent that there be no appeal beyond the state department in a welfare case. As such, it is complementary to and confirmatory of § 12–902, subsec. A, as interpreted in Allen v. Graham, *supra.* There is authority to the effect that the legislature

1. "ADC" or "AFDC" is the federally assisted program established pursuant to 42 U.S.C.A. § 601 et seq., the aim of which is to provide aid to needy families with dependent children. *See infra.* The program was formerly known as "Aid to Dependent Children," hence the initials "ADC." The name of the program has been changed and it is now referred to as "Aid to Families with Dependent Children," or "AFDC." *See* n. 1 of King v. Smith, 392 U.S. 309, 311, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118, 1122 (1968). It will hereafter be referred to as "AFDC" in this opinion.

cannot limit the remedy of certiorari, which has a constitutional basis. Batty v. State Dental Board, 57 Ariz. 239, 250, 112 P.2d 870, 875 (1941), citing former art. 6, § 6, Ariz.Const., A.R.S. *See also* 10 Cal.Jur.2d Certiorari § 6, p. 47. The writ lies to review "judicial" (as opposed to "legislative") decisions of "quasi-judicial" administrative bodies as well as the decisions of courts. Batty v. State Dental Board, *supra*, at 57 Ariz. 251, 112 P.2d 875–876. Use of the writ has heretofore been made in proceedings involving the welfare department. Bennett v. State Board of Public Welfare, 95 Ariz. 170, 388 P.2d 166 (1963); Camerena v. Department of Public Welfare, 9 Ariz.App. 120, 449 P.2d 957 (1969), now under review in the Supreme Court.

■ Traditionally, and under our statute, certiorari lies only when an inferior tribunal has exceeded its jurisdiction and there is no appeal, nor any plain, speedy and adequate remedy otherwise. Johnson & Douglas v. Superior Court, 101 Ariz. 373, 374, 419 P.2d 730, 731 (1966); A.R.S. § 12–2001. "Jurisdiction" is of three different kinds: jurisdiction over the person; jurisdiction over the subject matter; and *jurisdiction to render the particular judgment* in question. Wall v. Superior Court of Yavapai County, 53 Ariz. 344, 352, 89 P.2d 624, 628 (1939). Our Supreme Court has stated that "The word 'jurisdiction' has different shades of meaning and as applied to certiorari and prohibition matters it should not be given a too restrictive meaning." Duncan v. Truman, 74 Ariz. 328, 331, 248 P.2d 879, 882 (1952). Acts in excess of jurisdiction may include acts which are beyond the powers of the inferior tribunal *as defined by statute*. Caruso v. Superior Court, In and For Pima County, 100 Ariz. 167, 171, 412 P.2d 463, 465 (1966), paraphasing Abelleira v. District Court, 17 Cal.2d 280, 109 P.2d 942, 948, 132 A.L.R. 715, 723 (1941). In State ex rel. Morrison v. Thomas, 80 Ariz. 327, 297 P.2d 624 (1956), our Supreme Court held in a certiorari proceeding that the superior court had exceeded its jurisdiction

in ordering issuance of a liquor license beyond the number permitted by a proper construction of the pertinent statute. The court stated, at 80 Ariz. 335, 297 P.2d 629, that " * * * if a court construes a statute conferring only a limited jurisdiction upon it so as to exercise a power not authorized such a construction is jurisdictional."

■ Appellants have pressed upon us the principle that this writ may be used to review orders within the jurisdiction of the lower tribunal when there is an abuse of discretion. Arizona undoubtedly permits such a review, when it is an act of a lower tribunal as to which the reviewing court has appellate and/or supervisory jurisdiction. *See* State ex rel. Ronan v. Superior Court, In and For Maricopa County 95 Ariz. 319, 322, 390 P.2d 109, 111 (1964).

■ When a writ is directed to a court in our judicial system, we see no cause for alarm that our Supreme Court has extended the traditional role of special writs. The Supreme Court is vested by our Constitution with the power to establish rules of procedure for all courts of this state, art. 6, § 5, Ariz.Const., and it has broad appellate, art. 6, § 5, *supra*, and supervisory power over our judicial system. Ariz.Const. art. 6, § 3. The procedure by which it determines to exercise these powers is peculiarly within its province. But, when the legislature has clearly indicated, as it has in the case of decisions of the Welfare Department, that there shall be no judicial review, then we believe it would be an unwarranted exercise of judicial power to extend the traditional role of a special writ to grant judicial review for something labeled an "abuse of discretion."

We proceed, then, to determine whether the ruling complained of here is so directly contrary to the clear terms of the statutes under which the board derives its authority to make these quasi-judicial decisions that the ruling falls into that classification of orders which are beyond the jurisdiction of the tribunal to make. *See* Wall v. Superior

Court of Yavapai, *supra;* State ex rel. Morrison v. Thomas, *supra.*

Part of the controlling statutory law is the following:

"A. The state department shall establish a plan for aid to permanently and totally disabled persons, *which shall conform to the requirements necessary to qualify for federal funds under title XIV of the federal social security act.*"[2]

(Emphasis added) A.R.S. § 46–232.

Another section of the same title, § 46–311, as amended, provides as follows:

"Where any conflict with the federal social security act shall occur in this title, that act shall control."[3]

The fundamental object of the federal legislation, as set forth in 42 U.S.C.A. § 1351, is the furnishing of financial assistance and opportunity for rehabilitation to " * * * needy *individuals* eighteen years of age and older who are permanently and totally disabled * * *" (Emphasis added.) It is thus the *individual* who is the object of the APTD program, just as it is the *individual* who is the object of the programs for aid to the blind,[4] and old age assistance.[5] This focus on the individual in these programs is in contrast to the "AFDC" program, the statutory authority for which is found under Part A of Subchapter IV of the Social Security Act, entitled "AID TO FAMILIES WITH DEPENDENT CHILDREN." The AFDC program is designed " * * * for aid and services to needy *families* with children * * *," (emphasis added) 42 U.S.C.A. § 602(a), as amended, in accordance with its basic purpose of " * * * encouraging the care of dependent children in their own homes * * *," 42 U.S.C.A. § 601, as amended.

Title 42 U.S.C.A. § 1352, as amended, which sets the requirements for federally assisted state APTD programs, provides in part:

"§ 1352. *State plans for aid to the permanently and totally disabled*

"(a) A State plan for aid to the permanently and totally disabled must * * * (10) provide * * * and *that aid to the permanently and totally disabled shall be furnished* with reasonable promptness *to all eligible individuals * * *.*" (Emphasis added)

The "other income and resources" provision of this same statute, critical here, reads as follows:

"(a) A State plan for aid to the permanently and totally disabled must * * * (8) provide that the State agency shall, in determining need, take into consideration any other income and resources *of an individual claiming aid to the permanently and totally disabled,* as well as any expenses reasonably attributable to the earning of any such income * * *." (Emphasis added)

The corresponding portions of the statute setting requirements for federally assisted AFDC programs, 42 U.S.C.A. § 602(a) (7) and (8), as amended, on the other hand, provide that the state plan shall, in determining need, take into consideration and other income and resources " * * * of any child or relative claiming aid to families with dependent children, or of any other individual * * *" residing in the household whose needs are considered in determining aggregate need.

Considered alone and *in vacuo,* subsection 1352(a) (8) might not be sufficient to carry the day for appellants. On its face, 1352(a) (8) might be more readily characterized as a federal "pursestrings" provision than as a provision aimed at limiting a state's power to attribute another's "other income and resources" to an APTD

---

2. We are here concerned with the statute as amended in 1962. The $80 monthly benefit limitation of subsection B was deleted by amending legislation in 1969. *See* Ch. 74, § 5, Laws of 1969.

3. Prior to 1962, § 46–232, establishing the APTD program, was expressly excepted from the terms of this provision.

4. 42 U.S.C.A. § 1201 et seq.

5. 42 U.S.C.A. § 301 et seq.

recipient. But when this provision is viewed in the context of subsection 1352(a) (10) and the other provisions of 42 U.S.C.A. §§ 1351–1355 defining the nature of the APTD program and establishing its requirements, and in contrast to the provisions establishing the AFDC program, it is reasonably clear that there is nothing in the APTD legislation which grants to the states the right to attribute to *an individual claiming APTD benefits* income and resources of another person which is not actually available to the APTD claimant.

Our conclusion in this regard is buttressed by interpretive regulations promulgated by the United States Department of Health, Education and Welfare, which are set forth in the Department's Handbook of Public Assistance Administration. While it does not appear that these regulations have been published in the Federal Register or in the Code of Federal Regulations, a number of them were cited and relied upon as being indicative of proper statutory construction by the United States Supreme Court in King v. Smith, 392 U.S. 309, 317 et seq., 88 S.Ct. 2128, 2133 et seq., 20 L.Ed.2d 1118, 1125 et seq. (1968). The regulation numbered 3120 in Part IV of the Handbook contains the following language:

> " * * * a State must differentiate between resources that can be counted on because they are available for current use on a regular basis and those found not to be available for the individual's use in meeting subsistence needs as defined in the State's standard. This means taking into consideration, in determining need and amount of payment, all current income * * * and, in contrast, omitting from consideration in determining need and amount of payment any income or resources merely assumed to be possessed by the individual.
>
> "*Thus, income must not be considered where it is not in fact, currently available to the needy individual;* e. g. * * *

contributions which relatives have been determined able to make but which are not, in fact, made * * *." (Emphasis added)

In King v. Smith, *supra,* the court held invalid a state "substitute father" regulation which the State of Alabama had enforced in administering its AFDC program. While, as we have seen, the AFDC program is critically dissimilar to the APTD program here under consideration, the court's discussion of regulations similar to the one quoted above has pertinence here. Citing, among others, the regulation quoted in part above, the court stated in note 16 of the opinion:

> " * * * *Regulations of HEW, which clearly comport with the statute,* restrict the resources which are to be taken into account under [42 U.S.C.A.] § 602 to those 'that are, in fact, available to an applicant or recipient for current use on a regular basis * * *.'· *This regulation properly excludes from consideration resources which are merely assumed to be available to the needy individual.* Handbook, pt. IV, § 3131(7). See also §§ *3120,* 3123, 3124, 3131(10), and 3131(11)." (Emphasis added)  (Footnote 16 at 392 U.S. 319, 88 S.Ct. 2134, 20 L.Ed.2d 1127.)

■ From the foregoing, it is clearly apparent that there was no basis for the appellee department's applying its regulation 3–404.3 relating to "Earned Income of Unemancipated ADC Minors" in the present case. Under the applicable federal law, adopted as controlling by our legislature, it was the individual needs of Mr. and Mrs. Jones and the other income and resources *actually available to them* as individuals which determined the amount of their benefits. Eugene's uncontroverted affidavit, admittedly and properly [6] a part of the record, states that since he started employment he was unable to contribute anything to the support of his parents. While the Joneses had a legal right to Eugene's earnings, it is

---

6. Even unsworn written statements may be admissible in administrative hearings of the type held here. *See* Cohen v.

Perales, 412 F.2d 44, decided by the United States Court of Appeals, Fifth Circuit, on May 1, 1969.

**260**

actual rather than legally theoretical "other income and resources" which is controlling. Eugene's failure to support his parents could not prejudice their rights.

We are thus led to determine the merits in appellants' favor. We think, in accordance with our earlier discussion of reviewability, that the appellee department had jurisdiction only to administer a program of aid to the permanently and totally disabled pursuant to state and federal statute. It had no jurisdiction to interject anomalous and conflicting AFDC concepts into the APTD program. It did not, in short, have authority to administer the APTD program in clear violation of its state and federal statutory basis.

Reversed.

HATHAWAY and KRUCKER, JJ, concur.