LERNER, Appellant, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES (Division of Family Services), Respondent.

*No. 131 (1974). Argued October 28, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 478.)

For the appellant there were briefs by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *Howard A. Davis* and *Jean Seaburg* of counsel, all of Milwaukee, and oral argument by *Howard A. Davis.*

For the respondent the cause was argued by *George B. Schwahn,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The petitioner applied for a category of medical assistance, popularly referred to as

medicaid. This type of medical assistance is identified by statute or regulations as a benefit made available to individuals known as "medically indigent." Sec. 49.47, Stats. The basis for this type of assistance is Title XIX of the Social Security Act, 42 U. S. Code, sec. 1396 *et seq.* (1970), as amended (Supp. III, 1973).

Initially, although it has no substantive effect on our decision in this case, we do observe that the entire Social Security Act, the federal regulations promulgated pursuant to the act, and the Wisconsin statutes enacted in response thereto, have been extensively amended since petitioner first made application for assistance to the Milwaukee county department of public welfare in 1972. These amendments became effective on January 1, 1974.

As we understand the case, the petitioner raises no constitutional issues. Basically, the issues presented relate to statutory construction and the department's application of the statute with respect to federal law. The principal statute involved is sec. 49.47 (4) (d), Stats., which sets the standards for eligibility and provides as follows:

"(d) Any person who has conveyed, transferred or disposed of any property within 2 years prior to the date of making application for benefits under this section without receiving adequate and full consideration in money or money's worth shall, unless shown to the contrary, be presumed to have made such transfer, conveyance or disposition in contemplation of receiving benefits under this section and shall be ineligible to receive such benefits thereafter until the value of such property shall have been expended by or in behalf of such person for his maintenance need, including needs for medical care."

The dispositive issue is whether, under the facts of this case, the department's application and interpretation of the statute is consistent with the purposes of the statute and with Title XIX of the Social Security Act.

The facts necessary to resolve the issue are not in dispute.

In 1968, petitioner entered a convalescent center in Milwaukee as a private-pay patient. Her husband died in 1968, and in 1969 a certificate of termination of joint tenancy issued which vested in petitioner title to certain commercial real estate and other real estate and personal property. The commercial real estate is the only asset involved on this appeal. The commercial property was appraised at $40,000. On or about January 4, 1971, the commercial property was transferred as a gift to petitioner's five children. One of the sons, Henry, operated a grocery store in the building located on the property and he subsequently purchased the one-fifth share held by each of the other four children. Information supplied to the Milwaukee county public health department by the convalescent home indicates that between 1968 and January, 1973, approximately $31,000 had been expended in petitioner's care.

On June 13, 1972, petitioner's daughter applied on behalf of her mother for benefits under Title XIX of the Social Security Act and Wisconsin statutes, ch. 49. This application was denied. A memo from an employee of the securities division of the department of public welfare states that the value figure on the assessment of the commercial property then stood at about $89,000, and that the divestment of said property without adequate consideration made her ineligible for benefits, in view of statutory provisions contained in sec. 49.47 (4) (d), Stats. Petitioner's daughter made a second application on January 18, 1973, and this application was also denied on August 20, 1973, for the same reasons.

For the purposes of this appeal it is not necessary to establish a precise value of the commercial real estate. It obviously was substantial.

The department found that the petitioner was ineligible for medicaid payments, in view of the uncontested fact

that petitioner had transferred her commercial property without adequate consideration less than two years prior to the date on which her first application for assistance was made. It was found that the presumption that such divestment was in contemplation of becoming eligible for benefits had not been overcome.

The department further found that petitioner's contention that she was eligible for assistance once the two-year time limitation had expired, regardless of the purpose of the transfer, was also without foundation:

"This department has consistently held that the date of application is the date on which one first applies for assistance and that the mere passage of time does not in and of itself obviate the ineligibility, nor does a second application submitted more than two years after a divestment change the burden of proof."

With respect to the petitioner's argument regarding the time limitation, the court found that the department's practice of measuring the two-year period in relation to the first application for assistance was appropriate, since any other interpretation would nullify the provisions of sec. 49.47 (4) (d), Stats., *supra.*

On appeal to this court, petitioner contends that sec. 49.47 (4) (d), Stats., is invalid because it allegedly conflicts with the provisions of Title XIX in two respects. First, it mandates consideration of resources not actually available to an applicant for assistance and, second, it makes the eligibility requirements for the medicaid program more stringent than those under other state assistance programs. Thus, according to petitioner, because it is in conflict with Title XIX, sec. 49.47 (4) (d) must be declared invalid since according to the authority of *King v. Smith* (1968), 392 U. S. 309, 333, 88 Sup. Ct. 2128, 20 L. Ed. 2d 1118:

". . . [A]ny state law or regulation inconsistent with . . . federal terms and conditions [imposed upon disbursement of its money allotments to the states] is to that extent invalid. . . ."

Petitioner's first contention, relating to actual available resources, is based on her interpretation of 42 U. S. Code, sec. 1396a (a) (1970), as amended (Supp. III, 1974) (Title XIX), which reads in pertinent part, as follows:

"(a) A State plan for medical assistance must—

"...

"(17) include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . . ."

The regulations promulgated by HEW under Title XIX include directions to the effect that:

"(a) . . . A State plan under title XIX of the Social Security Act must:

"...

"(2) With respect to both the categorically needy and, if they are included in the plan, the medically needy;

"(i) Provide that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated . . . ." 45 CFR 248.21 (a).

This CFR section was incorporated verbatim into 45 CFR 248.3 (a) (2) (b) (1), effective January 1, 1974, and applies to states.

According to petitioner, this federal statutory section and regulation prohibit provisions in state plans which attempt to take into account resources not presently available for the applicant's use, regardless of prior activities or transactions resulting in depletion of resources. We are of the opinion neither the statutes nor the regulations can reasonably be interpreted to allow or authorize complete divestment of property so as to become eligible for benefits.

Several jurisdictions have addressed the question of what is meant by the term "actually available" resources. *Wilczynski v. Harder* (D. C. Conn. 1971), 323 Fed. Supp. 509; *Jones v. Lopez Plascencia* (1969), 10 Ariz. App. 253, 458 Pac. 2d 120; *Solman v. Shapiro* (D. C. Conn. 1969), 300 Fed. Supp. 409. We deem none of these cases to be supporting of the petitioner's position in this case. In *Wilczynski,* the court found invalid a provision in the Connecticut regulations which considered the face value of a life insurance policy as an actually available resource instead of the cash value. *Jones* found invalid a regulation which considered the income of an unemancipated minor as an "actually available" resource to the parents seeking disability benefits. *Shapiro* held that the income of a stepparent could not be considered an available resource for the support of a child, in the absence of a legal obligation on the part of the stepparent to support the child.

On the other hand, the divestment of assets without adequate consideration generally has been found to mandate a different result in resolving the issue of available resources and eligibility for benefits. In *Arlasky v. Dimitri* (1971), 38 App. Div. 2d 665, 327 N. Y. Supp. 2d 177, the petitioner transferred income producing property in trust for the benefit of her retarded son which left her with no other resources. She then applied for medical assistance and the application was denied. In upholding the denial, the court stated, ". . . While it is understandable that petitioner desired to assist her needy son, the Legislature never intended to permit the transfer of assets to the detriment of the public in general. . . ." Similarly, the court in *Haight v. Kandiyohi County Welfare Board* (1971), 291 Minn. 538, 191 N. W. 2d 559, affirmed a determination of the agency commissioner that petitioner was ineligible for medical assistance because, contrary to statutory provision, he had transferred

property within a three-year period prior to application for the purpose of attaining eligibility.

In *Abramson v. Welfare Commissioner* (1974), 31 Conn. Supp. 544, 330 Atl. 2d 822, the plaintiff initially applied for Title XIX benefits in 1968, but the application was denied because of excess assets totaling $10,000 in bank accounts. She disposed of these assets by giving approximately $2,000 to a charity and $4,000 to each of two daughters. Her benefits were later terminated because of these transfers without consideration. She claimed the termination illegal because, as a result of the transfers, she was in fact without available resources at the time the commissioner was required to determine her eligibility. The court found this argument to be without merit and stated:

"The contention that the action of the defendant in terminating benefits in June, 1972, is illegal because the plaintiff had no available resources at that time begs the question. . . . If we follow the plaintiff's argument, the departmental regulations, . . . would be meaningless. Once a disposition of assets has been made, obviously a person is without available resources. The interval of time that elapses is of no significance." *Abramson v. Welfare Commissioner, supra,* pages 824, 825.

Thus, courts which have been faced with the issue of present availability of assets as it relates to prior divestment have been uniform in holding that lack of present assets does not justify a petitioner's prior actions in disposal of assets.

However, in the three cases cited above the court was not called upon to consider or address the question of possible conflict between state and federal statutory and regulatory provisions.

It is apparent that the commercial property given by petitioner to her children is no longer available to her, as an individual, within the meaning of *Jones v. Lopez Plascencia, supra,* nor is any portion of its value present-

ly available to meet existing needs, *Wilczynski v. Harder, supra.* Therefore, if the language of 42 U. S. Code, sec. 1396a (a) (17) (B) and 45 CFR 248.21 (a) (2) (i), *supra,* were to be construed literally, sec. 49.47 (4) (d), Stats., would appear to be in conflict with that language, and thus invalid. *King v. Smith, supra.* However, in both *Jones* and *Wilczynski, supra,* the resources attributed to plaintiffs for purposes of the ineligibility determination were funds which were neither then available to the individuals to meet their present needs, nor had they ever been available. In contrast, the courts in the three cases involving prior divestment of assets found that such divestment negated any claims based on present unavailability of resources. Thus, the circumstances giving rise to the present inability to meet medical expenses are the determinative factor in passing on the question of what should be considered as an "actually available resource."

This court has held that inadequacy of consideration for transfers of property properly can be considered in determining fraudulent intent. *Waukesha County Dept. of Social Services v. Loper* (1972), 53 Wis. 2d 713, 193 N. W. 2d 679. The Wisconsin legislature apparently deemed it necessary to guard against the possibility of fraud in connection with application for Title XIX and sec. 49.47, Stats., benefits. Sec. 49.47 (4) (d), therefore, raises the presumption that divestment of property within a two-year period prior to application without fair value recompense is for the purpose of obtaining benefits. It does not prohibit benefits to persons without actual available resources. It merely requires the petitioner to demonstrate that the lack of presently available resources is not the result of a divestment of property for the purpose of qualifying for benefits. Thus, the statutory provision is not in conflict with the federal statute and regulations, but is merely a procedure for determining what assets are, in fact, available to meet present needs

or, but for divestment, would have been available. Petitioner is not precluded from making a showing that the specific divestment was not made in contemplation of benefits or without receiving full and adequate consideration. Any interpretation which finds conflict between the federal statute and the state provision would seem to allow for extensive abuse of the medical assistance program, since a failure to require the showing mandated by sec. 49.47 (4) (d) could result in any and every person who meets the income eligibility requirements automatically becoming eligible for benefits by the simple expedient of giving away or signing over control of all measurable assets. Such a result could not have been contemplated by the legislature when it enacted Title XIX, nor by HEW when it promulgated regulations thereunder. We conclude that sec. 49.47 (4) (d) is not in conflict with federal statutes or regulations pertaining to the actual availability of resources, and should not be declared invalid on that basis.

Petitioner's second contention is grounded in her interpretation of 42 U. S. Code, sec. 1396a (a) (10) (C) (i) (1970) (Title XIX) and the regulations adopted to implement that provision, 45 CFR 248.21 (a) (3) (i) (D) (now 45 CFR 248.3 (c) (1) (iv)). The statutory section reads as follows:

"(a) A State plan for medical assistance must—
". . .
"(10) provide—
". . .
"(C) . . .
"(i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan . . . ."

The CFR regulation provides that:

"(D) Resources which may be held must, as a minimum, be at the most liberal level used in any money payment program in the State . . . ."

Petitioner claims that since provisions similar to sec. 49.47 (4) (d), Stats., are not contained in statutory provisions regarding eligibility for aid to blind or totally and permanently disabled persons (or were not contained therein prior to the repeal of those statutes), nor for eligibility for aid to dependent children, sec. 49.47 (4) (d) results in ineligibility of certain applicants for medical assistance whose prior divestment of assets would not render them ineligible under other state plans, should they meet the remaining eligibility requirements of those plans. Thus, says petitioner, sec. 49.47 (4) (d) does not comport with federal statutory standards.

However, the statutory provision and regulation cited above do not prohibit collateral eligibility requirements included for the purpose of conserving state resources for distribution among those who really require assistance, in the absence of clear legislative intent that such requirements not be imposed. *New York Dept. of Social Services v. Dublino* (1973), 413 U. S. 405, 93 Sup. Ct. 2507, 37 L. Ed. 2d 688.

We believe petitioner's reliance on *Schaak v. Schmidt* (D. C. Wis. 1971), 344 Fed. Supp. 99, is not well-founded. In that case, a provision in sec. 49.47, Stats. 1971, was declared invalid. Sec. 49.47 (4) (b) provided that:

"Eligibility exists if his property does not exceed a home and the land used and operated in connection therewith not to exceed the equity of $7,500."

The court reviewed requirements for eligibility contained in other state plans and noted, on page 103, that:

". . . eligibility for categorical assistance may exist despite the fact that the recipient has an equity exceeding $7,500 in a homestead, therefore the medically needy are subjected under §49.47 (4) (b) to a resource limitation less liberal than those in other State money payment programs. The regulation [45 CFR 248.21, *supra*] is obviously violated . . . ."

The section was amended subsequently, to the effect that no monetary limitation is now imposed on equity in a home.

The statutory section found to be invalid in *Schaak, supra,* imposed an absolute dollar amount ceiling on a particular asset, and that ceiling had not been placed on the same type of asset in provisions relating to eligibility in other state monetary plans. In contrast, sec. 49.47 (4) (d), Stats., does not place any actual monetary limitation on any type of asset. It requires only that a showing be made that no conveyances without adequate consideration have been undertaken for the purpose of obtaining benefits. No one who would be eligible for benefits under other state money plans is precluded automatically by operation of this section from receiving benefits, contrary to 42 U. S. Code, sec. 1396a (a) (10) (C) (i), *supra,* nor does it place a less liberal limit on resources actually held than other state plans, contrary to 45 CFR 248.21 (a) (3) (i) (D).

We do not consider that a conflict exists between the state and the federal statute and regulation since there is no indication of legislative intent in Title XIX that a state should not be allowed to protect its citizens against misuse of public funds by the expedient of inquiring into the nature of conveyances which might have taken place for the purpose of obtaining benefits. In light of the purpose and policy of the federal and state statutes and regulations, sec. 49.47 (4) (d), Stats., does not conflict with federal provisions and, thus, is not invalid.

Since we determine that sec. 49.47 (4) (d), Stats., does not conflict with the federal provisions, the question remains as to whether the presumption was appropriately applied to the petitioner in the instant case. We conclude that under the facts of this case the presumption was properly applied to the petitioner. Petitioner attempted to overcome this presumption by attaching affidavits

from three of the five children involved asserting that the transfer was for the purpose of fulfilling petitioner's desire that the children have the property as a gift, as well as facilitation of the business operated in the building by one of the sons. However, effectuation of such intent could have taken the form of a will, as noted in *Arlasky v. Dimitri, supra.* Furthermore, at the time the transfer was made, petitioner was already in the nursing home and it could not be known how long she would have to remain. Therefore, it must have been within the reasonable contemplation of petitioner, or of her children in her behalf, that the assets and income represented by the transferred property might at some future point in time be needed for her maintenance and medical expenses. Moreover, petitioner was not precluded from showing that the actual value of such property had been expended in her behalf, as mandated by sec. 49.47 (4) (d), Stats. As the court below noted, the issue was not raised.

Finally, the department has consistently held that mere passage of time does not obviate the finding of ineligibility at the time of the first application. Petitioner has shown no change in circumstance, other than passage of time, which would require a finding different from the original determination of ineligibility. As the consistent departmental interpretation is entitled to great weight, *Milwaukee v. Wisconsin Employment Relations Comm.* (1969), 43 Wis. 2d 596, 168 N. W. 2d 809, such an interpretation of the statute with respect to mere passage of time is appropriate. Furthermore, in view of the circumstances surrounding the transfer of property herein, such an interpretation of the statute is not inconsistent with its purposes, nor is the statute in conflict with Title XIX of the Social Security Act.

*By the Court.*—Judgment affirmed.