482 P.2d 117

Samantha Kay Frye **FARRELL**,
Plaintiff and Appellant,
v.
John W. **TURNER**, Warden, Utah State Prison, Defendant and Respondent.

No. 12163.

Supreme Court of Utah

March 5, 1971.

1. Lowe v. Rosenlof, 12 Utah 2d 190, 364 P.2d 418 (1961).

2. A. L. Williams & Sons v. Brown, 18 Utah 2d 224, 418 P.2d 981 (1966).

Ronald N. Boyce, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for respondent.

ELLETT, Justice.

Heretofore in a criminal case Mrs. Farrell was charged with violating Section 76–50–6, U.C.A.1953, which makes it a felony to carry or send into a prison anything to aid a prisoner to escape. At her arraignment she said she did not want an attorney. The court explained the right to have an attorney during the following colloquy taken from the record:

THE COURT: Mrs. Farrell, you are charged in an information, which I hand you a copy of it, with the felony of furnishing implements to aid a prisoner to escape. This is a serious charge and is punishable by imprisonment for a term of years in the Utah State Prison, and when I asked you if Mr. Ronnow had had a chance to talk to you and you indicated something about an attorney. In that regard, let me say this to you, the law provides that any person accused of a felony is entitled to be represented by an attorney. It provides further that if they have the means or can properly secure the means they should get their own attorney, if they want one; if they do not have the means or can't properly secure the means to employ an attorney to represent them, the Court will appoint one for them to counsel with them and so on. Of course, my next question, then, is do you have an attorney to represent you in this matter, knowing that it is a very serious matter?

SAMANTHA KAY FRYE FARRELL: No. sir.

THE COURT: You do not?

SAMANTHA KAY FRYE FARRELL: No sir.

\* \* \* \* \* \*

THE COURT: Well, you understand what I am talking about when I say this is a felony and punishable by imprisonment for a term of years in the Utah State Prison?

SAMANTHA KAY FRYE FARRELL: Yes sir.

THE COURT: And the law does not force an attorney on you, but if you desire an attorney Mr. Ronnow, seated behind you, has had a lot of experience and is a very able lawyer, and I would ask him to counsel with you and advise you, if you want me to.

SAMANTHA KAY FRYE FARRELL: No sir, I don't.

THE COURT: You don't want him. Did I understand, then, that you waive your right to an attorney?

SAMANTHA KAY FRYE FARRELL: Yes sir.

That she knew the nature of the charge against her is shown by the following excerpt taken from the record:

THE COURT: Thank you. Mrs. Farrell, then, the next question I have for you, do you know of any reason

you shouldn't be called upon to enter your plea at this time?

SAMANTHA KAY FRYE FARRELL: No sir, I don't.

THE COURT: Samantha Kay Frye Farrell, what is your plea to the information just read to you, a copy of which you hold in your hand, are you guilty or are you not guilty?

SAMANTHA KAY FRYE FARRELL: Guilty.

THE COURT: By that am I to understand that you did on or about the 23rd day of May, 1969, and within Iron County, take, carry, furnish, or otherwise provide hacksaw blades to one Douglas E. Farrell, a convicted felon, while he was incarcerated in the Iron County Jail and for the purpose of aiding him in facilitating his escape?

SAMANTHA KAY FRYE FARRELL: I did.

THE COURT: You did?

SAMANTHA KAY FRYE FARRELL: Yes.

THE COURT: Did you know it was wrong, against the law to do that?

SAMANTHA KAY FRYE FARRELL: Yes sir, but I certainly didn't intend for anyone to get hurt, I want you to know that, I wasn't thinking under those terms of anyone at all getting hurt.

THE COURT: I appreciate that. You did do this, though, and knowing it was against the law?

SAMANTHA KAY FRYE FARRELL: Yes sir, I did.

The court then appointed the public defender, an experienced lawyer and a former district attorney, to represent her and then recessed court for noon, so that she and counsel could confer. When the matter was called again, the appointed counsel said he thought there was a defense to the charge, but the appellant herein would not change her plea. The judge then stated that she should think about it for a few days, that he would be back in that county thirteen days later, and that she was not foreclosed from withdrawing the guilty plea if counsel thought proper. The judge then requested a presentence report on Mrs. Farrell from the Adult Probation Department.

Neither Mrs. Farrell nor her attorney ever made a request to withdraw the plea of guilty, and thirteen days later when the judge returned, sentence was pronounced upon her. The execution of sentence was suspended, and Mrs. Farrell was placed on probation for two years. Soon thereafter the conditions of probation were violated, and after notice and hearing, her probation was revoked, and Mrs. Farrell was committed to prison. She filed a petition for a writ of habeas corpus and

now appeals from a dismissal by the trial court of that petition.

A habeas corpus proceeding is civil in nature, and Mrs. Farrell had the burden of convincing the trial court by a preponderance of the evidence that she was unlawfully incarcerated before she could obtain her freedom by means of the writ.

Through her counsel she stipulated that findings of fact and conclusions of law should be waived, and without making any findings of fact or conclusions of law the trial court ordered that her petition be denied and that she be remanded to the custody of the defendant warden.

Rule 52(a), U.R.C.P., formerly permitted findings of fact and conclusions of law to be waived, but in 1965 the provision permitting the waiver was deleted. Even so, a party who waives the making and entering of findings of fact and conclusions of law cannot take advantage of the failure of the court in that regard,[1] and this court on appeal will not review the facts but will assume that the trial judge found them to be such as to sustain his ruling if there is competent evidence to support it.[2] However, in view of the intermeddling of the Federal Courts in state criminal matters, it would seem to be unwise for a trial court to follow a stipulation of waiver and fail to make findings of fact in habeas corpus matters.

Rule 65B(f) (3) of the Utah Rules of Civil Procedure provides: " * * * If the writ is not issued the court shall state its reasons therefor in writing and file the same with the complaint, and shall deliver a copy thereof to the plaintiff." This provision of the Rules deals with the case where no writ is issued by the court and not to the trial when the petitioner has been produced in court pursuant to a writ. Section 78–35–1, U.C.A.1953, provides for a forfeiture of not exceeding $5,000 in case a judge unlawfully and wilfully refuses to allow a writ to be issued, and the rule requiring the reasons for refusal to allow the writ to be made in writing is intended to be of assistance to both the petitioner and the judge in the event the applicant undertakes to recover under the forfeiture provision of the statute.

Let us examine the evidence produced at the hearing on this habeas corpus matter to see if Mrs. Farrell should have been released.

1. Mrs. Farrell does not claim any error because of the failure to make findings. She perhaps considers it a good strategic move and hopes to have the Federal Court make its own finding as soon as she has exhausted her state remedies.

2. Mower v. McCarthy, 122 Utah 1, 245 P.2d 224 (1952).

█ She testified that the reason she entered a plea of guilty to the charge against her was that she wanted to go to prison in order to be with her husband, who was being sentenced to a term in prison for the crime of forgery. This was her own desire and was not induced by anything said or done by anybody else. Even if her testimony were true, it would not justify her release from prison in this proceeding. She further testified that she did not know that she entered a plea of guilty to the charge contained in the information but thought she was pleading to a charge of aiding and abetting an escape and that no prison term could be imposed for that offense.

The trial court did not have to believe this self-serving statement, and with the official transcript of the proceedings before him, he could hardly fail to know that the appellant well knew that she was charged with the crime of taking hacksaw blades into a prison for the purpose of enabling her husband to escape from his lawfully imposed imprisonment.

█ She makes one more feeble attempt to show a defense in that she now claims that she acted in large part because of the pressure exerted upon her by her husband, who threw letters out of the jail to her. In them she claims he told her to break into the jail, get the keys, and unlock the doors, and that if she did not do it, he would be in prison for 20 years. She claims that she was, therefore, incapable of committing a crime because of the provisions of Section 76–1–41, U.C.A.1953, which provides:

All persons are capable of committing crimes, except those belonging to the following classes:

\* \* \* \* \* \*

(8) Married women, unless the crime is punishable with death, acting under the threats, command or coercion of their husbands.

This statute has been on the books since the 19th Century. It is difficult to make a married man of this day and age believe it has any valid basis for its existence. However, it is the law, and we must honor it. By giving full weight to its words and spirit, it still does not aid the appellant. She was told to break in and get the keys and unlock—not to give hacksaw blades so he could break out. Even if she had been coerced by her husband, she departed from his coercion and committed an entirely different crime of her own choosing.

The evidence supports the judgment of the trial court, and the judgment is affirmed.

CALLISTER, C. J., and TUCKETT, HENRIOD, and CROCKETT, JJ., concur.