Kim (Fazzio) WOODWARD,
Plaintiff and Appellee,

v.

Richard Cameron FAZZIO, Defendant and Appellant.

No. 900626–CA.

Court of Appeals of Utah.

Dec. 9, 1991.

John Walsh, Salt Lake City, for appellant.

Larry R. Keller, Salt Lake City, for appellee.

Before JACKSON, ORME, and RUSSON, JJ.

1. Such a provision is not terribly helpful to parties, like these, whose breakup is accompanied by considerable rancor.

## OPINION

ORME, Judge:

Appellant appeals the juvenile court's order terminating his parental rights in his son. Appellant challenges the juvenile court's findings of fact insofar as they purportedly support a determination of abandonment. We reverse and remand for more detailed findings.

## FACTS

Appellee Kim Woodward and appellant Richard Cameron Fazzio met in 1985 and began living together in August of that year. In September of 1986, Woodward gave birth to the parties' son. Three months later, Woodward and Fazzio participated in a marriage ceremony. However, at the time of the ceremony Woodward was already married to another man. As a result, when the union between Woodward and Fazzio was terminated, annulment was the method employed. The decree of annulment gave Woodward custody of the child, subject to reasonable visitation by Fazzio "as the parties can agree." [1] After approximately two years under this arrangement, during which time Fazzio claims Woodward repeatedly attempted to prevent him from contacting the child, Fazzio petitioned the district court to amend the decree to provide for specific visitation. Woodward responded with a petition to terminate Fazzio's parental rights and a motion to transfer the same to juvenile court. The transfer was granted, and the petition was heard by the juvenile court in August of 1990. The court granted Woodward's petition, ruling Fazzio's conduct constituted abandonment of the child. This determination was accepted by the district court.

On appeal, Fazzio challenges the correctness of four of the juvenile court's findings of fact.[2] Those findings, in pertinent part, provide:

2. Fazzio sets forth three additional issues on appeal. These arguments are wholly without merit and we decline to address them. *See, e.g., State v. Carter,* 776 P.2d 886, 896 (Utah 1989).

(# 7) Petitioner and Respondent separated for the last time on September 10, 1987, and Respondent has failed to make a serious effort to see the minor child, since that time.

. . . .

It is evident to the court that the natural father has abdicated his responsibility as a parent to said child. He has absented himself, for various and sundry reasons, from the Child's life.

. . . .

His contacts with the child have been inconsistent, sporadic and token.... [T]he father's contact with the child has been minimal and only when his parents, Mr. and Mrs. Richard Fazzio, the paternal grandparents, had the child.

. . . .

The father testified to frequent contacts and visits with the child, usually when in the care of the paternal grandparents, but, on more than one occasion, the father's testimony was directly impeached rendering his testimony less reliable and trustworthy. Indeed, there is credible and believable testimony that the child does not know Richard Cameron Fazzio as his father.

. . . .

The court is convinced that the father's conduct has led to the destruction of the parent/child relationship.

(# 8) During the period of the parties' separation, and since the date of the Decree of Annulment (November 19, 1987) Respondent has paid no child support to Petitioner or anyone else on behalf of the minor child.

. . . .

(# 10) Subsequent to the birth of the said child, Respondent had the opportunity to legally declare his paternity for the minor child, but he failed to do so in order to prevent the State of Utah or other persons or agencies from requiring him to meet his financial obligations as a parent.

(# 11) [Respondent] ... was emotionally abusive to the minor child, who is the subject of this action.

## LAW GOVERNING TERMINATION OF PARENTAL RIGHTS

Utah Code Ann. § 78–3a–48 (1987) provides the mechanism by which termination of parental rights may be effected. Since, in the instant case, the termination is based solely on abandonment, we begin our analysis by identifying the elements necessary to establish that condition.[3] The statutory abandonment provision reads as follows:

(1) The court may decree a termination of all parental rights with respect to one or both parents if the court finds either (a), (b), (c), or (d) as follows:

. . . .

(b) that the parent or parents have abandoned the child. It is prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following the surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child;

. . . .

Utah Code Ann. § 78–3a–48 (1987).

▌▌▌ Only for a custodial parent may a "prima facie" showing of abandonment be established as set forth in subsection (b). *State ex rel. T.E. v. S.E.,* 761 P.2d 956, 958 (Utah App.1988). But abandonment by a non-custodial parent like Fazzio, as well as a custodial parent, "may also be found where conduct on the part of the parent 'implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship.'" *Id.* (quoting *State ex rel.*

---

**3.** Under the statute, termination is permitted by a clear and convincing showing of: (1) parental unfitness or incompetence; (2) abandonment of the child; (3) refusal or failure to properly care for the child during an at-home trial period; or (4) failure to communicate with the child for a period of one year, without just cause. *See Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982); *In re K.S.,* 737 P.2d 170, 172 (Utah 1987).

*Summers Children v. Wulffenstein,* 560 P.2d 331, 334 (Utah 1977)). *See State ex rel. J.R.T. v. Timperly,* 750 P.2d 1234, 1236 (Utah App.1988). The *Wulffenstein* test for determining abandonment in termination proceedings requires proof of two elements. First, the party seeking termination must prove that "the parent's conduct evidenced a conscious disregard for his or her parental obligations" to the child. *Timperly,* 750 P.2d at 1236. Second, the party must demonstrate that the "disregard led to the destruction of the parent-child relationship."[4] *Id.; Wulffenstein,* 560 P.2d at 334. Both of these elements must be proven by clear and convincing evidence. *See Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982); *In re J. Children,* 664 P.2d 1158, 1159 (Utah 1983).

### FINDINGS GENERALLY

■ Rule 52(a), Utah R.Civ.P., provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon...."[5] Utah appellate courts "consistently stress" the importance of adequate "findings of fact." *State v. Vigil,* 815 P.2d 1296, 1300 (Utah App.1991). To succeed in challenging the findings, appellant must prove they are clearly erroneous, i.e., against the clear weight of the evidence. *State ex rel. J.R.T. v. Timperly,* 750 P.2d 1234, 1236 (Utah App.1988). Therefore, if we are to determine whether the evidence adduced at trial supports the trial court's findings, the findings must embody sufficient detail and include enough subsidiary facts to clearly show the evidence upon which they are grounded. *See Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987); *Bastian v. King,* 661 P.2d 953, 957 (Utah

1983); *Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). Absent adequate findings of fact, meaningful review of a decision's evidentiary basis is virtually impossible. *See State v. Lovegren,* 798 P.2d 767, 771 (Utah App.1990).

Fazzio, in his brief and at oral argument, characterized his appeal as a challenge to the trial court's factual findings. Accordingly, he attempted to marshal the evidence, as is required for such a challenge. *See In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)). However, the marshaling effort was largely ineffectual by reason of the conclusory nature of the trial court's findings of fact.

■ "The process of marshaling the evidence serves the important function of reminding litigants and appellate courts of the broad deference owed to the fact finder at trial." *State v. Moore,* 802 P.2d 732, 739 (Utah App.1990). However, we will only grant this deference when the findings of fact are sufficiently detailed to disclose the evidentiary basis for the court's decision. *See Lovegren,* 798 P.2d at 771 (trial court decision afforded no deference when findings inadequate). *See also Allred v. Allred,* 797 P.2d 1108, 1111 (Utah App. 1990) (failure to enter detailed findings concerning child support determination constitutes abuse of trial court's discretion). There is, in effect, no need for an appellant to marshal the evidence when the findings are so inadequate that they cannot be meaningfully challenged as factual determinations. In other words, the way to attack findings which appear to be complete and which are sufficiently detailed is to marshal the supporting evidence and then demonstrate the evidence is inadequate to sustain such findings. But where the findings are not of that caliber, appel-

---

**4.** Concern for the child's best interest is manifested in the second prong of the *Wulffenstein* abandonment test: there is a strong presumption that a child is better off in the care of its natural parents, or at least having some relationship with its natural parents, and absent clear and convincing evidence that the parent's disregard for his or her obligations caused a *destruction* of the parent-child relationship, the

presumption against termination will govern. *See In re J.P.,* 648 P.2d 1364, 1377 (Utah 1982); *In re Castillo,* 632 P.2d 855, 856–57 (Utah 1981); *State ex rel. M.W.H. v. Aguilar,* 794 P.2d 27, 29 (Utah App.1990).

**5.** The rule is applicable to juvenile proceedings. *See In re N.H.B.,* 777 P.2d 487, 493 (Utah App.), *cert. denied,* 789 P.2d 33 (Utah 1989).

lant need not go through a futile marshaling exercise. Rather, appellant can simply argue the legal insufficiency of the court's findings as framed. As explained in the next section, whatever may be said of the extent to which the trial court's intended findings lack evidentiary support, the more immediate problem in this case is the inadequacy of the findings.

## INADEQUACY OF TRIAL COURT'S FINDINGS OF FACT

■ Although the trial court's findings of fact constitute a full three pages of text, they nonetheless provide an inadequate account of the actual *facts* supporting the court's ultimate decision. Most of the "findings" are conclusory, and reflect an intention to merge the trial court's ultimate factual determinations with the requirements of the *Wulffenstein* test, and as such are more akin to conclusions of law. *See Vigil,* 815 P.2d at 1299–1301. Finding of Fact #7, for instance, states that "[appellant's] contacts with the child have been inconsistent, sporadic and token," that "it is evident to the court that the natural Father has abdicated his responsibility as a parent," and that "the court is convinced that the father's conduct has led to the destruction of the parent/child relationship." These conclusory statements provide no insight into the evidentiary basis for the trial court's decision and render effective appellate review unfeasible.[6] *See Adams v. Board of Review,* 821 P.2d 1, 5–6 (Utah Ct.App.1991). The issue before the court was whether Fazzio had abandoned R.A.F.; accordingly, the findings should have set forth *specific facts*—subsidiary facts—bearing on that issue. The conclusory statements in Findings of Fact #7, 8,

10, and 11 do not provide this information and are therefore inadequate.

■ Unless the record "clearly and uncontrovertedly support[s]" the trial court's decision, the absence of adequate findings of fact ordinarily requires remand for more detailed findings by the trial court.[7] *Acton,* 737 P.2d at 999. *See also Lovegren,* 798 P.2d at 770–71 (remand necessary when facts disputed). *But see State v. Ramirez,* 817 P.2d 774, 787–88 & n. 6 (Utah 1991) (suggesting same liberalization of *Acton's* requirement of express findings even absent uncontroverted evidence).

■ We have canvassed the record in the instant case and find disputed evidence, making affirmance as a matter of law impossible. *Cf. Lovegren,* 798 P.2d at 771 n. 10 (absence of adequate findings is harmless when facts concerning an issue are undisputed). There was conflicting testimony about the frequency and duration of Fazzio's visits with the child, his treatment of the child during those visits, Woodward's attempts to prevent Fazzio from visiting with the child, Fazzio's payment of child support, and Fazzio's provision of gifts to the child—all facts crucial to the validity of the court's ultimate decision that Fazzio's conduct had destroyed the parent-child relationship. *See Adams,* 821 P.2d at 6 ("When multiple conflicting versions of the facts create a matrix of possible factual findings, we are unable on appeal to assume that any given finding was in fact made.").

The trial court's findings of fact should resolve these conflicts unequivocally, by stating the specific subsidiary facts as the trial court found them. The findings should set forth, with as much precision as possible, the number of times Fazzio visited the child during particular periods; the

6. Taking, for example, the court's statement that appellant's contacts with the child have been "token," the court obviously had in mind some number or range of contacts appellant had with the child. But such a finding is problematic. Does the court have in mind one contact over a three-year period or ten contacts over a one-year period? A reviewing court would possibly agree that the former is "token," but disagree that the latter is. However, without knowing what the trial court had in mind, to affirm

would be to defer to the court's *legal conclusion,* as though a matter of fact, without being able to evaluate its correctness against particular facts.

7. Otherwise, this court would be placed in the awkward position of having to speculate about what the court actually determined the facts to be, without benefit of the guidance that proper factual findings are meant to provide.

length of each of the visits; the number of visits Woodward intentionally prevented; the sums Fazzio provided as child support, either personally or through his parents; the number and type of gifts Fazzio gave to the child and the occasions on which he gave them; and the specific statements, acts, or omissions that demonstrate Fazzio's intent to either accept or disregard his obligations as a parent (e.g., instances of appellant performing child care functions like changing his diaper or feeding him, denying that the child was his responsibility, etc.).

Further, the findings should explicitly address the impact Woodward's frequent relocation had on Fazzio's ability to maintain contact with the child,[8] the effect Fazzio's living and working outside Utah had on his visitation,[9] the manner and effect of any refusal on Fazzio's part to legally acknowledge his paternity, and any other factors bearing on whether Fazzio consciously disregarded the child to such an extent that the parent-child relationship was destroyed.[10] The court's findings as to these issues should be set forth specifically and should correspond to the factual evidence upon which the court relied.

Once we possess this information, we can meaningfully evaluate whether the visits have been sporadic, the child support payments insufficient, Fazzio's conduct unacceptable, and, ultimately, whether Fazzio abandoned the child. Accordingly, we remand for more detailed findings by the trial court.

"We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached." *Allred v. Allred,* 797 P.2d 1108, 1112 (Utah 1990). This court is not altogether confident that the trial court's final decision was correct, particularly since the action to terminate Fazzio's parental rights was commenced by Woodward in *response* to Fazzio's petition for specific visitation. The timely assertion of such a petition by Fazzio is hardly the conduct of a disinterested parent.

JACKSON, J., concurs.

RUSSON, J., concurs in the result.

---

8. The record indicates that from the time the decree of annulment was entered until trial, Woodward had moved in with her mother, then into her own apartment, then to Coalville, Springville, Riverton, West Jordan, and back to Coalville.

9. The record indicates Fazzio was employed in Wyoming and Nevada for periods of time after the decree was entered and maintained residences in those states.

10. For example, the court seems to have discounted visits Fazzio had with his son while the son was in the company of Fazzio's parents. Especially given the animosity between Woodward and Fazzio, and Woodward's apparent preference for dealing with Fazzio's parents, no reason immediately suggests itself for why Fazzio's visits with the child during time the child spent with his paternal grandparents should not "count" in Fazzio's favor.