Gary LEVITZ, Plaintiff, Appellant,
and Cross–Appellee,

v.

Edward WARRINGTON, et al.,
Defendants, Appellees, and
Cross–Appellants.

No. 920855–CA.

Court of Appeals of Utah.

June 23, 1994.

Thomas R. Blonquist (argued), Salt Lake City, for appellant.

Donald L. Dalton (argued), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for appellee.

Before BENCH, DAVIS and JACKSON, JJ.

JACKSON, Judge:

Plaintiff Gary Levitz appeals the trial court's denial of attorney fees and treble damages sought under section 61–1–22 of the Utah Uniform Securities Act (Securities Act).[1] Defendant Edward Warrington cross-appeals the trial court's conclusion that there was a "purchase" of securities giving Levitz a cause of action under section 61–1–22. We vacate the trial court's judgment and remand for additional findings.

## FACTS

Warrington was chairman of the board and chief financial officer of Energex Corporation (Energex), a company which marketed, sold, and distributed a fuel additive called TK–7. Part of Warrington's duties included approving all potential investors. Warrington knew that Energex was unable to meet its present contractual obligations without financial assistance. Thus, Warrington, through Robert Pinder, persuaded Levitz to consider investing $250,000 in Energex in exchange for stock, a board directorship, and a position as director of marketing. Pinder made several material misrepresentations about Energex's financial condition and its real estate holdings in his proposal to Levitz. Warrington held a position in the company where he knew or at least should have known that the representations made to Levitz were false.

During negotiations, Warrington demanded that Levitz commit to the purchase of securities or withdraw. Levitz transferred $175,000 to Energex as a refundable deposit and "good faith gesture" with the understanding that after inspecting the plant operations, the deposit would be returned to him if he did not like what he saw. After visiting

---

1. Utah Code Ann. §§ 61–1–1 to –30 (1993). We note that the parties rely on an earlier version of the Securities Act. However, the amendments, as far as this case is concerned, are stylistic only.

the plant and seeing the financial statement, Levitz did not approve and requested the return of his deposit. Warrington agreed on behalf of Energex to return all of Levitz's money. Energex, however, had already used $64,650 and Levitz received only $110,350. No further negotiating took place.

Levitz filed an action in district court against Energex, Warrington, Pinder, Richard Cropper, Donald Young, Norm Greenbaum, and Fred Spindle seeking $64,650 in damages for conversion. On July 29, 1988, the court entered a default judgment against Cropper, Young, and Pinder and awarded Levitz $64,650 in damages, $7,750.43 in prejudgment interest, $1,471.22 in costs and disbursements, and postjudgment interest at the rate of twelve percent per annum. Cropper gave Levitz a promissory note for $64,650 on April 12, 1989.

On August 12, 1988, the court allowed Levitz to amend his complaint adding a cause of action for securities fraud and praying for treble damages, costs, and attorney fees. The amended complaint named Energex and Warrington as defendants. Energex failed to answer the complaint and Levitz received a default judgment against it. Warrington motioned the court for summary judgment on both the conversion and securities fraud causes of action. The district court denied the motion as to the securities fraud claim and granted the motion with respect to the conversion claim.

Levitz did not pursue his conversion claim further. The matter went to trial on the securities fraud claim only and the court found in favor of Levitz. The court held Warrington jointly liable with the defaulting defendants, but held that he was entitled to a $64,650 setoff. Thus the court held Warrington liable for prejudgment interest and costs pursuant to Rule 54 of the Utah Rules of Civil Procedure. ·

Levitz appealed the securities fraud claim asserting that the court should have granted him attorney fees and treble damages under section 61–1–22 of the Securities Act. Warrington cross-appealed claiming Levitz does not have a remedy under section 61–1–22.

## ANALYSIS

The trial court held that Warrington was a "control person" under section 61–1–22(4)(a) of the Securities Act, which holds him liable to the same extent as a seller or purchaser under section 61–1–22(1). *See* Utah Code Ann. § 61–1–22(4)(a) (1993). A person is liable under subsection (1)(a) for offering, buying, or selling a security by means of any untrue statement of a material fact. *Id.* at § 61–1–22(1)(a). The remedy under this section, however, is limited "to the person selling ... or buying the security." *Id.* Potential purchasers or mere offerees do not have a cause of action under this section.[2] *See Interlake Porsche & Audi, Inc., v. Bucholz,* 45 Wash.App. 502, 728 P.2d 597, 606 (1986) (interpreting statutory language substantially similar to our own); *see also Marcus v. Shapiro, Abramson & Schwimmer,* 620 So.2d 1284, 1285–86 (Fla.Ct.App. 4 Dist. 1993).

The *Interlake* court noted that "this limitation is in uniformity with the law in other states which ... have adopted the Uniform Securities Act."[3] *Interlake,* 728 P.2d at 606. Reading the section to limit causes of action to actual buyers and sellers is also in accord with federal court application of the corresponding section of the federal Securities Act. In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 754–55, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975), the Supreme Court reaffirmed that a plaintiff must be an actual purchaser or seller and not merely a potential purchaser to have a cause of action under the Securities Act. Although the facts of that case differ from ours, the *Blue Chip*

---

**2.** Other sections of the Utah Securities Act similarly limit the scope of those entitled to relief. Section 61–1–22(4)(a) makes a person liable only if *buyers or sellers* under his or her control are liable under section 61–1–22(1)(a). Section 61–1–22(4)(a) does not create liability for people who control *offerors* who are liable under section 61–1–22(1)(a), apparently for the rationale relied on in *Interlake:* unless there is an actual sale,

there are no damages for which the statutory remedy of rescission is appropriate. *See Interlake Porsche & Audi, Inc., v. Bucholz,* 45 Wash. App. 502, 728 P.2d 597, 606 (1986).

**3.** Utah adopted the Uniform Securities Act in 1963.

Court was asked to make an exception to the "buyer and seller only" rule[4] and recognize a cause of action for plaintiffs that were more than offerees or potential purchasers, but not quite actual purchasers. *Blue Chip*, 421 U.S. at 755, 95 S.Ct. at 1934. The Court declined to do so, finding the rule to be sound. *Id.* In so finding, the Court reasoned that it did not want to subject the rule to case-by-case erosion. *Id.* Thus, under the plain and unambiguous language of the Utah Uniform Securities Act, the seminal issue, one that affects Levitz's standing on appeal, is whether he was an actual purchaser as opposed to a potential purchaser or mere offeree.

■ The trial court concluded "there was an offer and sale of a security," and that "Levitz [was] a 'purchaser.'" A trial court's conclusions of law must be supported by its findings of fact. *See Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 2579 (1971). The trial court made the following findings concerning Levitz's "purchaser" status:

41. Warrington demanded that Levitz commit to the purchase of securities or withdraw from the purchase.

42. Levitz wired $175,000.00 on or about April 20, 1987, to Warrington's Birmingham, Alabama Energex Account.

43. Levitz transferred the $175,000.00 to Energex account as a refundable deposit toward the purchase of Energex stock with the understanding that after viewing the plant operations the funds would be returned to him if he did not like the operations.

44. On May 2, 1987, Levitz went to Oklahoma City with Warrington to inspect the facilities and operations of Energex.

45. After completing his investigation, Levitz requested the return of all of his funds.

46. Warrington, on behalf of Energex, agreed to return the money and returned $100,000.00 to Levitz within a week thereafter.

■ The trial court's findings that the purchase of stock was conditioned upon Levitz's approval of Energex's operations, and that he did not give his approval, do not support the conclusion that there was a sale or that Levitz was a purchaser. In fact, the findings support the opposite conclusion that there was no sale. The Utah Supreme Court has held:

The importance of complete, accurate and consistent findings of fact in a case tried by a judge is essential to the resolution of dispute under the proper rule of law. To that end the findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.

*Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979). We cannot discern from the trial court's findings how it reached the ultimate conclusions that there was a sale and that Levitz was a purchaser. The only conclusions the trial court's findings can support are that Levitz was a potential purchaser and that Energex was a potential seller. Given that Levitz's remedy rests on the trial court's conclusion that he is an actual purchaser, not merely a potential purchaser, the trial court's findings of fact are inadequate.[5]

4. This rule originated in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.1952), and is usually referred to as the *Birnbaum* rule.

5. The dissent concedes that Levitz must be a purchaser in order to have a remedy under section 61–1–22. The dissent views the trial court's findings as indicating that Levitz parted with $64,650 without receiving consideration and thus, the findings support a determination that Levitz was a purchaser. This view obscures two critical observations made by the trial court in its findings. First, the trial court found that Levitz's refundable deposit was delivered with the understanding that it would be returned if Levitz did not approve of Energex's operations. The trial court found that after inspecting the operations, Levitz requested his deposit back and Warrington agreed to return all of Levitz's money. These findings support a conclusion that no consideration was due Levitz because the parties agreed not to form a contract. Second, the dissent's summary of the findings hides the fact that Levitz's loss occurred when Warrington retained $64,650 of the refundable deposit after agreeing to return it.

The dissent suggests that the existence of an executory contract provides an alternative basis for affirmance. However, the trial court made

The absence of adequate findings of fact "ordinarily requires remand for more detailed findings by the trial court." *Woodward v. Fazzio,* 823 P.2d 474, 478 (Utah App.1991). Remand for adequate findings on a particular factual issue is unnecessary if the evidence concerning the issue is undisputed. *Id.; State v. Lovegren,* 798 P.2d 767, 771 n. 10 (Utah App.1990). We have canvassed the record on the issue of whether there was a sale and whether Levitz was a purchaser and "find disputed evidence, making affirmance as a matter of law impossible." *Woodward,* 823 P.2d at 478. Accordingly we vacate the trial court's judgment and remand the issue of whether Levitz was a purchaser to the trial court for further findings consistent with this opinion. As a final note, we point out that we do not necessarily agree with the trial court's conclusion that Levitz is a purchaser. Thus, we do not intend our remand "to be merely an exercise in bolstering and supporting the conclusion already reached." *Id.* at 479 (quoting *Allred v. Allred,* 797 P.2d 1108, 1112 (Utah 1990)).

DAVIS, J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. The trial court's findings of fact adequately support its determination that Levitz was a "purchaser" under the Utah Uniform Securities Act (Securities Act). I would affirm the trial court's decision on Warrington's cross-appeal. In any event, I would reach the substantive issues raised by Levitz in his appeal as to damages.

## ANALYSIS

### Adequacy of the Findings

The issue before this court on Warrington's cross-appeal is whether Levitz, having never received stock despite losing $64,650 to Energex, has standing to sue as a purchaser under the Securities Act. The trial court made several findings concerning Levitz's position as a purchaser. I believe that, when properly construed, the findings are consistent with the trial court's determination that Levitz was a purchaser of stock.[1]

The findings clearly indicate that Levitz parted with $175,000 and received back only $110,350. Although Warrington failed to return $64,650, he did not issue stock to Levitz, nor did he provide any consideration in exchange for Levitz's $64,650. Thus, Levitz paid $64,650 toward Energex stock, but a stock certificate was never issued to him.[2]

no findings concerning the formation of any contract, executory or final. Because the evidence in the record regarding contract formation is very much in dispute, we would be required to remand to the trial court for findings on the issue of whether a contract existed or was enforceable.

1. We are required to construe findings to be consistent with each other. *See State v. Ramirez,* 817 P.2d 774, 787–88 n. 6 (Utah 1991). In *Ramirez,* the Utah Supreme Court listed several reasons for affirming trial courts' decisions where the findings of fact may arguably be deficient.

See, e.g., *Sorenson v. Beers,* 614 P.2d 159, 160 (Utah 1980) (trial court upheld where requisite factual findings that were not made would only make explicit what was already implicit in other findings); *Seal v. Mapleton City,* 598 P.2d 1346, 1348 (Utah 1979) (presumption that trial court found facts necessary to support judgment); *Farrell v. Turner,* 25 Utah 2d 351, 355, 482 P.2d 117, 119 (1971) (even without requisite findings, trial court will be upheld if there is competent evidence to support ruling); *Mojave Uranium Co. v. Mesa Petroleum Co.,* 22 Utah 2d 239, 244 n. 7, 451 P.2d 587, 591 n. 7 (1969) (presumption that findings, if made, would be in harmony with decision); *Mower v.*

*McCarthy,* 122 Utah 1, 6, 245 P.2d 224, 226 (1952) (absent findings we affirm if it would be reasonable to find facts to support conclusion). *Id.,* 817 P.2d at 788.

2. Warrington's cross-appeal is limited to the following argument: "At no time has [Levitz] ever taken possession or delivery of the stock in question. This position is, and has always been, fatal to his claim for relief under the Utah Securities Act." Warrington further argued:

A plain and literal reading of Section 61–1–22 compels the conclusion that there is no right of recovery, and therefore no right of action, unless there has been a "tender" to the seller or a "disposition" of the security in question prior to the action. In other words, for [Levitz] to recover under the Securities Act, it is necessary that at some point in time he had the securities in his possession so that he could tender them back or dispose of them prior to the action.

Warrington's cross-appeal is therefore based solely upon the fact that the stock was never tendered to Levitz. This argument ignores basic principles of corporate ownership. *See, e.g., Norton v. Digital Applications, Inc.,* 305 A.2d 656,

Since Levitz paid Energex $64,650 in a stock deal, and received nothing in return, he has standing to sue as a purchaser.

The trial court's findings adequately support its determination that Levitz was a purchaser. Nevertheless, the main opinion remands the case for further findings. It does so without articulating what other findings are required. In view of the findings that the trial court has already made, I believe remand is unnecessary.

## Alternative Basis for Affirmance[3]

Assuming arguendo that the findings regarding an actual purchase are in some way deficient, there remains another basis for us to affirm. Section 61–1–22(1)(a) of the Securities Act provides that a person who offers or sells a security "is liable to the person ... *buying* the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney's fees...." Utah Code Ann. § 61–1–22(1)(a) (1993) (emphasis added). The Securities Act does not define a "buyer" or "seller"; however, since "securities laws are remedial in nature and should be broadly and liberally construed to give effect to the legislative purpose," *Payable Accounting Corp. v. McKinley,* 667 P.2d 15, 17–18 (Utah 1983), we should look to the legislature's definition of a "sale."[4]

Section 61–1–13(20)(a) defines a "sale" to include "every contract for sale of, *contract to sell,* or disposition of, a security or interest in a security for value." Utah Code Ann. § 61–1–13(20)(a) (1993) (emphasis added). Thus, under the statute, there need be only a contract to sell and not necessarily an actual sale. The Utah Supreme Court has acknowledged the differences between an actual sale and a contract to sell.

A sale involves a present transfer of the title in the goods from the seller to the buyer. A contract to sell implies that the title in the goods remains vested in the seller and is to be transferred to the buyer at some future time. Whether a contract is one of sale or an executory contract to sell depends always upon what the parties to it intend in regard to the time when the title in the property is to go to the buyer. If they intend the title to be transferred when the contract is made, it is a contract of sale; otherwise it is a contract to sell.

*Jones v. Commercial Inv. Trust,* 64 Utah 151, 163, 228 P. 896, 900 (1924).

Executory contracts are contracts that have not yet been fully completed or performed, but there is an obligation to complete or perform in the future. *See Wagstaff v. Peters,* 203 Kan. 108, 453 P.2d 120, 124 (1969). An executory contract to sell is a contract under which "something remains to be done by either party before delivery and passing of title." *Martin v. John Clay & Co.,* 167 S.W.2d 407, 411 (Mo.Ct.App.1943).

659 & n. 1 (Del.Ch.1973) ("person may be stockholder without having in hand a certificate evidencing stock ownership"); *Larry C. Iverson, Inc. v. Bouma,* 195 Mont. 351, 639 P.2d 47, 58 (1982) (individual may be stockholder even though stock certificate has not been issued). In view of how Warrington argues the cross-appeal, remand on the broader question of Levitz's status is unwarranted.

3. Since appellate courts may affirm trial courts on any basis, this court may properly base its affirmance on an argument not relied on by the trial court. *See State v. Elder,* 815 P.2d 1341, 1344 n. 4 (Utah App.1991) (appellate courts may affirm trial courts on any basis, but cannot reverse trial courts on any basis); *accord Mel Trimble Real Estate v. Monte Vista Ranch, Inc.,* 758 P.2d 451, 455–56 & n. 4 (Utah App.) (appellate court would not consider argument concerning judicial notice raised for first time on appeal "for the purpose of *reversing* the trial court" even

though it might have done so "if doing so would permit *affirmance*"), *cert. denied,* 769 P.2d 819 (Utah 1988).

4. The Securities Act was "adopted and designed to restore investors' confidence in the financial markets." *Payable Accounting Corp. v. McKinley,* 667 P.2d 15, 18 (Utah 1983) (citing Bennett, *Securities Regulation in Utah: A Recap of History and the New Uniform Act,* 8 Utah L.Rev. 216 (1963)). By its terms, the Securities Act covers much more than where there has been an actual transfer or tender of stock. It certainly should provide a remedy for an individual who parts with his or her money, especially in light of the misrepresentations by a company trying to sell its own stock. I believe the majority's decision in this case will severely limit the protections of the Securities Act.

While title to the stock in the present case did not pass with the $175,000 transfer, title to the stock clearly would have passed upon Levitz's approval of the plant operations and financial statements, and the additional investment of $75,000.

Executory contracts must comply with contract formation requirements. *See, e.g., Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1272 (Wyo. 1993). In the present case, Warrington, Pinder, and Cropper all stated that Levitz and Energex had an agreement concerning the purchase of stock.[5] Levitz agreed to transfer $175,000 to Energex in exchange for stock in the company and further manifested his agreement by wiring $175,000 to Energex. *See* Restatement (Second) of Contracts § 19 (1981) (manifestation of assent may be made by acts). I believe these parties had at least an executory contract to sell stock. The trial court's determination that Levitz was a purchaser can therefore be sustained under the Securities Act on the basis that the parties had a contract to sell.

The main opinion urges that mere offerees cannot recover under the Securities Act, stating that the rationale for this rule is that mere offerees sustain no damages. I do not disagree with this position. Levitz, however, moved from being a mere offeree to being a purchaser when the parties agreed that Levitz would transfer $175,000 to Energex in exchange for stock in the company. Levitz's position as a purchaser is bolstered by his wiring $175,000 to the company and the company's retention of part of his money, which resulted in damages of $64,650. Levitz was therefore more than a mere offeree, and the trial court's determination that he was a purchaser can be sustained under the Securities Act.

### Inappropriate Directives

Despite the foregoing bases for affirming the cross-appeal, I recognize that this case will now be remanded for further findings. I believe that the main opinion improperly suggests that the trial court should conclude, on remand, that Levitz was not a purchaser. For example, the main opinion states:

> [T]he findings support the opposite conclusion that there was not a sale.... The only conclusions the trial court's findings can support are that Levitz was a potential purchaser and that Energex was a potential seller. Given that Levitz's remedy rests on the trial court's conclusion that he is an actual purchaser, not merely a potential purchaser, the trial court's findings of fact are inadequate.

Further, the main opinion states: "[W]e do not necessarily agree with the trial court's conclusion that Levitz is a purchaser. Thus, we do not intend our remand 'to be merely an exercise in bolstering and supporting the conclusion already reached.'"[6] I believe that the main opinion has improperly suggested the result or conclusion the trial court should reach on remand.

Since it is possible that the trial court will again find that Levitz is a purchaser, the main opinion should address legal issues raised in Levitz's appeal. "We should ... resolve issues which are squarely before us on appeal when we can reasonably anticipate the reemergence of those issues in other proceedings hereafter." *Hiltsley v. Ryder,* 738 P.2d 1024, 1026 (1987) (Zimmerman, J.,

---

5. The main opinion mischaracterizes the facts by stating that "the parties agreed not to form a contract." The parties actually formed an agreement; however, the agreement provided Levitz with a right to cancel. The fact that Levitz had a right to cancel the agreement (and actually exercised that right) cannot be the basis for claiming that there was no agreement, in light of Levitz's parting with $175,000 at the parties' assent.

6. The main opinion cites *Woodward v. Fazzio,* 823 P.2d 474 (Utah App.1991). In *Woodward,* this court requested the trial court to address several issues on remand concerning a father's abandonment of his child, stating that it was "not altogether confident that the trial court's final decision was correct...." *Id.* at 479. On remand, the trial court entered several additional findings, supporting its previous decision and reinstituting its order to terminate the father's parental rights. The father again appealed to this court. *See State ex rel. R.A.F.,* 863 P.2d 1331 (Utah App.1993). In the second appeal, we affirmed the trial court's order terminating the father's parental rights despite our earlier pronouncement. In the present case, if the majority truly believes that the "only conclusion[] the trial court's findings can support [is] that Levitz was a potential purchaser," it should simply reverse the trial court rather than give the trial court the opportunity to merely bolster its decision, as was done in *Woodward.*

concurring) (cited with approval in *State v. James*, 819 P.2d 781, 795 n. 42 (Utah 1991)).[7] If the trial court bolsters its findings, the very issues that were argued to us in this appeal will again be before us. This is a waste of resources and time for both the parties and courts. In the interest of judicial economy, I believe we should resolve legal issues raised in Levitz's appeal since it is reasonable to anticipate the reemergence of these issues in a subsequent appeal.

## CONCLUSION

The trial court's findings of fact adequately support its determination that Levitz was a purchaser. Alternatively, Levitz was a purchaser under sections 61–1–13(20)(a) and 61–1–22(1)(a) of the Securities Act. The main opinion improperly characterizes the facts, suggesting to the trial court that Levitz was something less than a purchaser.

I would affirm the trial court's decision on Warrington's cross-appeal. In any event, I would reach the substantive issues raised by Levitz in his appeal as to damages.

---

7. Rule 30(a) of the Utah Rules of Appellate Procedure provides that "if a new trial is granted, the court will pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case". Utah R.App.P. 30(a). Rule 30(a) applies directly to an outright retrial on remand, but the identical language of this rule has also been "interpreted to apply to a remand for additional proceedings...." *Hiltsley v. Ry-* *der*, 738 P.2d 1024, 1026 (Utah 1987) (Zimmerman, J., concurring) (citing *Salt Lake County v. Salt Lake City*, 570 P.2d 119 (Utah 1977)). The Utah Supreme Court has previously held that "when a new trial or further proceeding is ordered, it is our duty to pass upon questions of law which may be pertinent and helpful in arriving at a final determination of the case." *Id.* (citing *Lopes v. Lopes*, 30 Utah 2d 393, 395, 518 P.2d 687, 688 (1974)).